D. B. S. Building Association *v.* Erie (et al., Appellants).

Argued November 12, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*William B. Washabaugh, Jr.,* with him *Washabaugh & McClure,* for appellants.

*Jackson D. Magenau,* with him *Magenau & Gornall,* for appellee.

OPINION BY ROSS, J., January 14, 1955:

This is a zoning case. The D. B. S. Building Association, hereinafter called Association, applied to the "zoning administrator" of the City of Erie for a certificate of occupancy or a "permit" to use certain land owned by it as a parking lot. The administrative official to whom the application was made refused to issue

the requested certificate or permit and, on February 13, 1952, the "zoning board of appeals" sustained this action. No appeal was taken from this determination. Subsequently the Association brought a proceeding in mandamus in the Court of Common Pleas of Erie County requesting that the "building inspector" of the City be directed to issue a certificate of occupancy. On March 19, 1953 the court sustained preliminary objections to the petition for writ of mandamus and no appeal was taken from the order. On April 13, 1953 the Association again sought a certificate of occupancy through administrative procedures, and again, on May 13, 1953, the "zoning board of appeals" considered the merits of the matter and denied the certificate. The association then appealed to the Court of Common Pleas which, after hearing testimony, entered an order setting aside the action of the "zoning board of appeals" and directing it to issue a certificate of occupancy. From this order two appeals were taken to this Court by owners of property in the vicinity of the proposed parking lot, who had been permitted to intervene in the proceedings before the administrative body and in the court below.

In the foregoing procedural history of the case we have employed the designations of the administrative official and body used by the parties and by the court below. In all probability, however, the "zoning board of appeals" is a board of adjustment as provided for in the Act of June 23, 1931, P. L. 932, art. XLI, section 4120, as amended, 53 PS sec. 12198-4120. The Act provides for an appeal to the board of adjustment "by any person aggrieved or by any city officer affected by any decision of the administrative officer" (53 PS sec. 12198-4123) and imposes upon the board of adjustment the duty to "(1) Hear and decide appeals upon allegations of material error in any order, requirement,

decision or determination made by any official administering the zoning ordinance" (53 PS sec. 12198-4122).

The Association, a non-profit Pennsylvania corporation, holds title to a building used as a clubhouse, located in a district zoned for commercial use in the City of Erie and on October 23, 1951 it acquired a vacant lot north of and adjacent to its other property. The vacant lot is situated in a district zoned "B" Residence and the zoning ordinance of the City of Erie lists among the permitted uses for such district, "4. Clubhouse (not including a club the chief activity of which is a service customarily carried on as a business) . . . Accessory uses, incident to any of the principal uses above listed . . ." The ordinance provides further "In any Residence District, accessory uses shall be uses customarily incident to the principal uses listed as permitted therein . . ."

Throughout the entire course of these proceedings the Association has advanced the theory that its use of the vacant lot as a parking lot for the convenience of those using the clubhouse facilities is consistent with the provisions of the zoning ordinance. This was the theory adopted by the court below when it stated in its opinion: "There seems to be no question that this club could, under the zoning ordinance, be now established on the vacant lot in question. The zoning ordinance so provides. It therefore seems unreasonable that this lot cannot be used for auxiliary purposes in connection with its club property immediately abutting and in a business district . . . Parking facilities for members' cars is a proper auxiliary feature in the conduct of club affairs . . ."

The crucial inquiry is whether the club operated on the Association property is the type of club which the zoning ordinance is designed to exclude from areas zoned "B" Residence, that is, whether its "chief ac-

tivity . . . is a service customarily carried on as a business". We propose to examine the testimony bearing upon that question.

The Building Association, was chartered primarily to hold the assets of the real estate of the lodge which is a national association. The shares of the Association are held by the Danish Brotherhood Lodge No. 242, hereinafter referred to as Lodge and this organization operates the club on the Association premises. The "grand" or "parent" lodge with which both the Association and the Lodge are affiliated is located in Omaha, Nebraska. The Lodge came into existence in 1906 and the parent organization was formed in Nebraska in 1881 or 1882. The clubhouse now used by the Lodge was acquired in 1936.

Both the Association and the Lodge have approximately 186 "Lodge members", presumably the same persons. It is required that these members "either be a Dane, Danish descent or married to a Danish woman". Lodge members enjoy "voting rights in matters pertaining to the lodge" and "insurance privileges". The Lodge has approximately 1400 "social members". There is no requirement that social members be of Danish descent. Social members have no voting rights nor are they entitled to share the insurance benefits available to lodge members, their privileges being limited to use of the facilities of the club. The Lodge has a club liquor license and it operates a bar and restaurant on the premises owned by the Association. Social members are "entitled to . . . use the bar and to have meals and use the facilities of the club". They enjoy certain other benefits such as a party for children during the Christmas season, an annual picnic and various social affairs at the club building. Further, there is a "group within the social membership known as the chorus of the Danish Club" which performs for "dif-

ferent organizations, Erie hospitals, orphans, old people's homes and so forth".

The club is open to members from 7:00 P.M. to 1:00 A.M. Monday through Friday, from 3:00 P.M. Saturday to 2:00 A.M. Sunday and from 11:00 A.M. Sunday to 1:00 A. M. Monday.

The "chief source of revenue" of the Lodge is the "bar and the kitchen" on the premises owned by the Building Association. The revenue derived from this source is, according to the president of the Danish Brotherhood, "devoted to charities, civic enterprises, for the betterment of the facilities" of the club "and, in general, the beneficial aspects that would be with a fraternal organization." A trustee of the Lodge testified that the "main purpose" of the lodge "is to have insurance and also pay sick benefits to the sick and help needy members." The chorus mentioned above rehearses at the clubhouse every Monday evening and "that activity increased the revenue of the club by reason of the fact that the members of the choir will use the bar after the rehearsal is over and before". It would appear, however, that the chorus costs the Danish Brotherhood "in excess of two thousand dollars per year maintaining it for civic enterprises".

The pivotal finding made by the court below is that the "exclusive purpose" of the Lodge "is social and fraternal with insurance benefits" and for that reason the clubhouse operated by the Lodge "comes within the class of permitted uses set forth in the zoning ordinance in B Residence Districts." With that conclusion we are impelled to agree.

It is to be recalled that the relevant section of the zoning ordinance lists among the permitted uses for "B" Residence district: "4. Clubhouse (not including a club the chief activity of which is a service customarily carried on as a business)." The controversy in

the case at bar is whether the ordinance is designed to direct attention to the pursuits of an organization on the premises it uses as a clubhouse, or whether location of the clubhouse for zoning purposes is governed by the broad purpose of the organization itself. The difficulty lies in the use of the word "club" for which there appear in Webster's New International Dictionary, second edition, the following pertinent definitions: "6. An association of persons for the promotion of some common object, as literature, science, politics, good-fellowship, etc., esp. one jointly supported and meeting periodically. Membership is usually conferred by ballot, and carries the privilege of exclusive use of club quarters. 7. The building, apartment, or room occupied by a club."

If city council used the word "club" in the zoning ordinance to mean an association of persons etc., it is clear that this clubhouse would be a permitted use in "B" Residence district because, as the court below found and the evidence discloses, the chief activity of the association of persons known as Danish Brotherhood No. 242 is fraternal, civic and charitable. If, on the other hand, "club" was used to mean the building in which an organization conducts its affairs, then, the clubhouse is not a permitted use because it would appear that the chief activity in that building is the sale of food and liquor, a service customarily carried on as a business.

The use of the preposition "of" in the ordinance leads us to the conclusion that the first interpretation is the correct one, that is, that "club" is intended to mean an association of persons. If by "club" council had intended to mean the building in which an organization conducts its affairs, the ordinance should and would have been drafted to read: "4. Clubhouse (not including a club [or clubhouse] *in* which the chief

activity is a service customarily carried on as a business)."

We conclude, then, that the clubhouse owned by the Association and used by the Lodge could, under the zoning ordinance, have been established and operated in an area zoned "B" Residence. It follows, we believe, that a parking lot for the convenience of club members is, as the court below held, a use "customarily incident" to the principal use, clubhouse, and thus a permitted use under the zoning ordinance.

The appellants contend that the instant case is ruled by *Perelman et al. v. Yeadon Borough Board of Adjustment,* 144 Pa. Superior Ct. 5, 18 A. 2d 438. We cannot agree. There the landowner sought a variance and, of course, the board of adjustment was called upon to exercise discretion. In the case at bar the landowner contended that the proposed use of land was consistent with the provisions of the zoning ordinance and on that basis sought a certificate of occupancy. The issuance or denial of that certificate should have been based upon an interpretation of the zoning ordinance. There was no occasion for an exercise of discretion by the administrative official or body.

Finally, appellants contend that "The adjudication of the Zoning Board of February 13, 1952 is res adjudicata." In *Crawford Zoning Case,* 358 Pa. 636, 57 A. 2d 862, one Elva G. Reinecker, record title holder of certain land, applied to the building inspector for a permit to make alterations to a garage for the purpose of converting it into a dwelling. The building inspector rejected the application and an appeal was taken to the board of adjustment. At the hearing Crawford appeared and testified that he was the real owner of the property. The board of adjustment sustained the decision of the building inspector and no appeal was taken to the Court of Common Pleas. More

than four months later Crawford, the then record title holder, filed an application with the building inspector substantially similar to that filed by Elva G. Reinecker. The application was again rejected and Crawford then appealed to the board of adjustment requesting a variance from the terms of the ordinance. The board entertained the appeal and took testimony. Once again the board of adjustment entered an order affirming the inspector. Crawford appealed to the Court of Common Pleas. One of the issues before the Court of Common Pleas and before the Supreme Court was whether Crawford was "presently concluded by the earlier action of the board of adjustment" (page 639). With respect to this question the Supreme Court stated at page 640: "The court properly held that the board's earlier action with regard to the application submitted by Elva G. Reinecker did not conclude appellant's rights *since the board entertained the second appeal and decided it on its merits.*" (Italics supplied).

In the case at bar, the administrative body entertained the Association's second appeal to it and decided the matter on the merits. The instant case is, we believe, controlled by the *Crawford* case. Actually the case at bar is stronger than the *Crawford* case. There the landowner sought a variance, a matter of indulgence which it was within the discretion of the board of adjustment to grant or withhold within proper limits. Here the landowner sought merely to establish a right afforded it by the zoning ordinance itself and the matter was only technically within the province of the administrative body as an intermediate step between the administrative official and the courts.

We agree with the learned court below "Restrictions under zoning ordinances must be construed strictly in their application as they are in derogation of an owner's right to use his property for legitimate

purposes. In our opinion a certificate for use of the vacant lot for its intended purpose should be issued".

The order of the court below is affirmed.

HIRT and WOODSIDE, JJ., dissent.