United Cerebral Palsy Association *v.* Zoning Board of Adjustment (et al., Appellant).

Argued May 4, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Thomas M. Schubert,* with him *William E. Schubert, Jr.* and *Schubert & Schubert,* for appellants.

*Theodore Voorhees,* with him *Timothy B. Atkeson, Robert M. Landis,* and *Barnes, Dechert, Price, Myers & Rhoads,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, May 23, 1955:

The Overbrook Farms Club, an association of neighborhood residents, objects, on this appeal, to the grant by the court below of a use registration permit for a residence at 6020 Overbrook Avenue, Philadelphia, to be occupied by a group of young men physically handicapped by cerebral palsy.

The United Cerebral Palsy Association of Philadelphia and Vicinity applied to the Zoning Division of the Philadelphia Department of Licenses and Inspection for the use registration permit in question. The project of the Association is to establish a residence, presently for ten, possibly later for twenty, members of a group ranging in age from 18 to 35, who have formed themselves into an organization called the "Pioneers." They do not require nursing or custodial care and no medical treatment of any kind will be administered to them on the premises. They are of normal mentality but they suffer in common from the disability visited upon them by their affliction. They will assist in the running of the household. Their reason for associating in a habitation where they will live, dine and sleep is because they presently lack suitable

home environments. Many of them are regularly employed and self-supporting.

The property at 6020 Overbrook Avenue is a large stone residence of ten bedrooms. It is situated in spacious and well-planted grounds. It has an elevator, commodious kitchen facilities, a greenhouse and a four-car garage. Portions of the accessory buildings will probably be used for vocational training, handcraft, horticulture and recreational activities for members of the group.

The property for which the use registration permit was requested is in a "A" residential district. The Zoning Division denied the application, and, on appeal to the Zoning Board, that tribunal likewise held that the permit should not be granted nor a variance allowed. The Court of Common Pleas, however, reversed the order of the Board and granted the use registration permit. The present appeal from that order is by the Overbrook Farms Club which intervened in the original proceedings.

The Philadelphia Zoning Ordinance of August 10, 1933, listed, among the specific uses permitted in a "A" residential district, club houses, schools and dormitories. Also permitted were hospitals, sanitaria, eleemosynary and public institutions (other than correctional), but there was a provision that buildings for such uses should be located at least 75 feet from any adjoining lot or lots. It was because of this requirement that the Zoning Board rejected plaintiff's application because it held that the proposed use of the building for which the permit was requested was that of a sanitarium, and, as it had side yards of only 25 feet and 45 feet and a rear yard of 10 feet in width it did not meet the 75 foot requirement.

In *Walker v. Zoning Board of Adjustment*, 380 Pa. 228, 110 A. 2d 414 (decided after the action of the

Zoning Board in the present case) we held that the use of premises for a school for physically handicapped children suffering from cerebral palsy did not constitute a sanitarium. We there pointed out that a sanitarium is a health station or retreat,—an institution for the recuperation and treatment of persons suffering from physical or mental disorder, whereas the institution in that case was not designed to give, nor did it give, any treatment to its students for physical illness. The same ruling applies to the present case since here also there is to be no medical or other treatment for the cure or amelioration of the disease with which these young men are afflicted; none of the attributes of a sanitarium, much less of a hospital, are present. It is true that plaintiff's operations are dependent to some extent on charitable support, but the phrase "eleemosynary and public institutions" must be construed to mean, under the rule of ejusdem generis, institutions of the nature of hospitals or sanitaria; this is obvious from the fact that there could not exist any valid reason for a 75 foot requirement in the case of such institutions as churches, schools, colleges, universities, convents, dormitories, libraries, art galleries and public museums, all of which are permitted in an "A" residential district and any or all of which might be eleemosynary or public institutions. It is clear, therefore, that the Board erred in rejecting the application for the permit because of the 75 foot requirement applicable to sanitaria and eleemosynary institutions.

We are of opinion that the court below correctly concluded that plaintiff was entitled to the grant of its requested permit as a "club house," or "dormitory," or both. Those terms are not defined in the ordinance and presumably are used in the broadest possible sense since restrictions imposed by zoning ordinances must be strictly construed: *Lord Appeal,* 368 Pa. 121, 126,

81 A. 2d 533, 535; *Medinger Appeal,* 377 Pa. 217 221, 104 A. 2d 118, 120; *Shapiro v. Zoning Board of Adjustment,* 377 Pa. 621, 628, 105 A. 2d 299, 302. A "club," of which there are many different types, is, in substance, merely an organization or association of persons who meet or live together for the purpose of social intercourse or some other common object such as the pursuit of literature, science, politics or good fellowship; see *D. B. S. Building Association v. Erie,* 177 Pa. Superior Ct. 487, 111 A. 2d 367; *Pollock v. Borough of Pottstown,* 68 Montg. Co. L. R. 340. A "dormitory" is defined by Webster as "a sleeping room, or a building containing a series of sleeping rooms." While the organization of the "Pioneers" may not follow some of the conventional practices and the formal methods of association usually employed by "clubs," but which it might, if deemed necessary, readily adopt, it is in essence a club composed of persons pursuing a common object and bound together by common ties. Nor is the combination of club and dormitory an unusual one since sleeping quarters, dining and recreational activities are quite ordinary adjuncts to club houses. As a club, or as a dormitory, or as both combined, the proposed use of plaintiff's property qualifies for admission into this "A" residential district: cf. *Overbrook Farms Club v. Philadelphia Zoning Board of Adjustment,* 351 Pa. 77, 40 A. 2d 423. It is therefore unnecessary to consider whether, as plaintiff contends, it should in any event be entitled to a variance from the strict application of the 75 foot provision even if it were held to be a sanitarium.

Appellants urge as an additional objection to the grant of the permit that the ordinance requires of all buildings in an "A" residential district that the minimum depth of the rear yard should be 25 feet whereas the rear yard of plaintiff's property has a depth of

only 10 feet. As a matter of fact the distance from the building to the lot in the rear is 77 feet but it appears that there are two accessory structures, a garage and a greenhouse, which are only 10 feet from the back line of the lot. Plaintiff, relying upon Section 2(18)(c) of the ordinance,* contends that the measurement in this regard should be made to the rear line not from the accessory buildings but from the main building. Be that as it may, plaintiff points out that the garage and the greenhouse were constructed long before the Zoning Ordinance was enacted, would therefore constitute a legal non-conforming use as to rear yard requirements, and accordingly are protected by a provision in the ordinance to the effect that any building or the use of any building existing at the time of the passage of the ordinance that does not conform in use, height, location, size or bulk with the regulations of the district in which it is located, shall be considered a non-conforming building or use, and may continue such use in its present location.

The order is affirmed at the cost of appellants.

---

* "Rear yard" is there defined as "A yard of the full width of the lot, located between the extreme rear line of *the building* and the extreme rear line of the lot, . . . ."