## Steppler et al. v. Board of Adjustment of Radnor Township

*John R. Graham,* for appellants.
*Edward H. P. Fronefield,* for appellee.

BRETHERICK, J., June 30, 1955.—This is an appeal by protestants from the action of the Board of Adjustment of Radnor Township granting the application of Conestoga Swim Club, Inc., for a special exception under the provisions of the Radnor Township Zoning Ordinance.

The return of the board of adjustment discloses that the application for a special exception was made on October 27, 1954. The board of adjustment held a public hearing on the application on November 15, 1954. On December 2, 1954, the board filed findings of fact, conclusions of law and an order granting the application, subject to certain terms and conditions.

Appellants aver in their petition for appeal that the decision of the board of adjustment is arbitrary, capricious, illegal, unwarranted, unjustified, unreasonable, confiscatory, willful and a manifest abuse of discretion, and set forth six separate reasons in support of their contention.

Additional testimony was taken before Judge Bretherick on March 17, 1955, and the testimony has been transcribed and filed of record.

Counsel have filed requests for findings of fact and conclusions of law, and able and comprehensive briefs

of argument. From the testimony taken before the board of adjustment and before the hearing judge, we make the following

*Findings of Fact*

1. Radnor Township is a first class township organized and existing under the laws of the Commonwealth of Pennsylvania, and located in Delaware County.

2. Conestoga Swim Club, Inc., is a nonprofit corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its registered office located at Rosemont, Pa.

3. The purpose for which Conestoga Swim Club, Inc., was organized is set forth in the articles of incorporation as follows: "To provide for its members, their immediate families and guests, swimming, recreational and social facilities and in furthering these purposes to own, maintain, lease and operate a swimming pool, club house, and other necessary property and paraphernalia."

4. Conestoga Swim Club, Inc., is the holder of an option for the purchase of an unimproved tract of land, containing approximately 9.6 acres, and located at Ithan, Radnor Township, Delaware County, Pa. The land has a frontage of approximately 600 feet on Sproul Road, and extends in a generally easterly direction to the dead end of Radnor Avenue.

5. The land is located in an R-1 residence district, the "top" residence district, under the provisions of the Radnor Township Zoning Ordinance of 1928, as amended.

6. Article III, sec. 301(3) of the zoning ordinance provides that a lot in an R-1 residence district may be used for: "Club, fraternity house or lodge, except where the principal activity is one customarily carried on as a business, when authorized as a special excep-

tion by the Board of Adjustment, in accordance with the provisions of Article XVI, its supplements and amendments."

7. Article XVI, sec. 1601 (2) of the zoning ordinance provides that the board of adjustment shall have power, inter alia: "To hear and decide special exceptions to the terms of this Ordinance upon which the Board is required to pass under this Ordinance, in harmony with the general purpose and intent of this Ordinance, with power to impose appropriate conditions and safe· guards."

8. On October 27, 1954, Conestoga Swim Club, Inc., filed with the board of adjustment an application, under section 301 (3) of the zoning ordinance, for a special exception to occupy and use as a club for swimming and recreational purposes the above described tract of land and the buildings or structures proposed to be erected thereon.

9. On November 15, 1954, the board of adjustment, pursuant to notice, held a public hearing on the application, and testimony was presented on behalf of the applicant, and on behalf of a number of protestants.

10. On December 2, 1954, the board of adjustment filed findings of fact, conclusions of law and an order granting the application for a special exception, subject, however, to certain express terms and conditions.

11. Appellants reside in the general neighborhood of the land in question, and in an area zoned R-1.

12. The general area involved is a main line suburban community, residential in nature, with lots containing one acre and upwards, and with homes ranging in value from about $10,000 to about $35,000.

13. The proposed membership of Conestoga Swim Club, Inc., is 325 families, and is restricted to residents of Radnor Township. The dues would be $9 per person per year, with a maximum of $36 per family. Shares, which sell for $175 each, furnish working capital.

14. One of the purposes of Conestoga Swim Club, Inc., as set forth in the articles of incorporation, is: "Not to contemplate pecuniary gain or profit, incident or otherwise, to its members."

15. The land upon which the club proposes to conduct its operations, and for which the special exception was granted, is rough, uneven and heavily wooded, and has a limited use because of its topography and general physical characteristics; it is not readily adaptable to residential development.

16. The club proposes to construct and maintain upon the premises a swimming pool measuring approximately 5,000 square feet in water surface area, together with a children's pool measuring approximately 1,000 square feet in water surface area, a bath house, a motor vehicle parking area, and a picnic area with benches, tables and open fireplaces.

17. The swimming pools would be of the State approved type, with a filtering and chlorination system.

18. The bath house would contain lockers, toilet facilities, an office and a snack shop for the sale of soda, packaged candies and cookies, but no cooked food.

19. The entire pool area, including both pools and the bath house, would be completely enclosed by a six-foot cyclone fence with barbed wire strung along the top of it, and the entrance gate to the pool area would be kept locked at all times during off hours.

20. The motor vehicle parking lot would be constructed to accommodate at least 100 cars, and would be surfaced with either blacktop or gravel.

21. The pool would be open from 10 or 11 o'clock in the morning until 8 o'clock at night, seven days a week, during the months of June, July and August, "give or take two weeks one way or the other".

22. At all times during the summer months when it is open, the pool would be operated by a full time paid

manager, and would be guarded by two or perhaps three life guards.

23. The pool would at no time be open after dark, and the club would make no provision for the installation of lights or lighting.

24. It is the club's plan that there would be no public address system on the premises, and no loud speaker system of any kind.

25. It is provided in article I, sec. 2, of the constitution of the club, inter alia, that: "This corporation shall not permit the sale, possession or consumption of liquor, beer or other intoxicating beverages on club property."

26. The club proposes to leave a 50-foot strip of trees and undergrowth around the entire perimeter of its premises to serve as a screen to protect nearby residents from any dust, noise, etc., which may emanate from its premises.

27. There are at the present time two entrances to the club premises, one from Sproul Road, a heavily traveled State highway, and the other from Radnor Avenue, a small township road with a dead end at the northeasterly boundary of the premises.

28. In granting the club's application for a special exception, the board of adjustment imposed the following terms and conditions:

"(a) A gate of substantial construction shall be provided for closing the driveway entrance from Sproul Road to the parking lot on the property, and during the hours when the club is not open this gate shall be maintained closed and locked.

"(b) No footpath or other entrance of any kind to the club property shall be permitted from Radnor Avenue, and if necessary the Conestoga Swim Club, Inc., shall provide adequate fencing or other suitable barrier to prevent access to the club property from Radnor Avenue."

29. The use of the premises in question for the purposes contemplated by the club may be expected to result in the emanation from the premises of some noise and dust, but such emanations are unlikely to be sufficient in quality or quantity to affect to any appreciable degree the public health, safety, morals or welfare.

30. The use of the premises in question for the purposes contemplated by the club will have little, if any, effect on neighboring property values.

31. The principal activity of the club is not one customarily carried on as a business.

32. The decision of the board of adjustment granting the special exception, subject to the stated conditions, is in harmony with the general purpose and intent of the Radnor Township Zoning Ordinance.

## Discussion

Appellants contend that the decision of the board of adjustment was illegal "because the applicant does not qualify as a 'club' ". We are constrained to disagree.

Since the zoning ordinance does not define "club", the word must be construed according to its common and approved usage. In the very recent case of D. B. S. Building Association v. Erie et al., 177 Pa. Superior Ct. 487, 493, a zoning case, the Superior Court adopted the following definition of "club" appearing in Webster's New International Dictionary, second edition:

"6. An association of persons for the promotion of some common object, as literature, science, politics, good-fellowship, etc., esp. one jointly supported and meeting periodically. Membership is usually conferred by ballot, and carries the privilege of exclusive use of club quarters."

Having in mind the purposes for which it was formed, as set forth in the articles of incorporation, it is too clear for argument that Conestoga Swim Club,

Inc., is a "club" within the meaning that must be ascribed to that term as used in the zoning ordinance.

We agree with appellants that, under the plain language of the ordinance, if the applicant is an organization where the principal activity is one customarily carried on as a business, then it cannot qualify for a special exception. Shortly stated, Conestoga's principal activity is the operation of a swimming pool and picnic ground for the benefit of its members, their immediate families and guests. We cannot concur in appellants' view that "swimming pools, for many years, have been customarily carried on as a business". There are swimming pools, it is true, that are carried on as a business. But there are a great many that are not. While we have seen no statistics on the question, common experience would seem to suggest that the numerical preponderance either way is not sufficient to warrant the conclusion that the activity is "customarily" carried on in that way. So much appears, indeed, in the testimony before us in this very case.

Appellants apparently are none too sure of their ground, for they seek to place a highly artificial and unwarranted interpretation upon the word "business". After pointing out that the word is not defined in the ordinance, they say: "However, it would appear that the word 'business' is used in contradistinction to the word 'residential'. It seems that if an activity is not residential it follows that it must be business."

In other words, appellants would include in the exception a club, fraternity house or lodge where the principal activity is a "non-residential" activity. Such an interpretation, however, would render section 301(3) practically meaningless, for it must be a strange club or lodge indeed whose principal activity is not "non-residential" in character. Moreover, the argument presupposes that the only use permitted in an

R-1 residence district is a residential use, which is not the case. It is clear, on the other hand, that the word "business" must be construed according to its common and approved usage, as we remarked in connection with the word "club", supra.

We conclude, therefore, that Conestoga Swim Club, Inc., is a "club" within the meaning of the term as used in the zoning ordinance, that its principal activity is not one customarily carried on as a business, and that the special exception granted by the board of adjustment was authorized by the clear and unambiguous terms and provisions of the ordinance.

It is appellants' final contention that the decision of the board of adjustment was a manifest abuse of discretion. Since all learned counsel in the case assume that such is the proper test or yardstick to be applied on this appeal, we shall adopt it. Upon this question, however, there may be considerable room for doubt. We shall not pursue the matter further than to call attention to the concurring opinion of Mr. Justice Bell in the recent case of Walker v. Zoning Board of Adjustment et al., 380 Pa. 228, beginning at page 234.

Under article XVI, sec. 1601(2) of the ordinance, the board is empowered to "hear and decide" special exceptions "in harmony with the general purpose and intent of this Ordinance".

The purposes of the ordinance are found in article I, sec. 100: "This Ordinance is enacted for the following purposes; To promote the health, safety, morals, and general welfare of the inhabitants of the Township of Radnor by lessening congestion in the streets; securing safety from fire, panic and other dangers; providing adequate light and air; preventing the overcrowding of land; avoiding undue concentration of population; facilitating the adequate provision of transportation, water, sewerage, schools, parks, and other public re-

quirements, conserving the value of buildings; and encouraging the most appropriate use of land."

It is obvious that the general purpose and intent of the ordinance is the promotion of the health, safety, morals and general welfare of the inhabitants of Radnor Township. The eight factors introduced by the preposition "by", every one of which appellants assert has been offended against by the allowance of the special exception, are but means or instrumentalities for the accomplishment of the general purpose and intent of the ordinance. They are at least secondary or subsidiary purposes. Clearly, the public health, safety, etc., may be promoted by means other than those enumerated, and which actually conflict with one or more of them. Indeed, some of the enumerated factors tend to cancel out one another. It is at least difficult, for example, to facilitate the adequate provision of schools and parks and at the same time lessen congestion in the streets. Children attend schools and citizens resort to parks, and create street congestion. It is required, therefore, at all times to preserve a critical sense of values, to keep a proper sense of proportion and to maintain a just comparison between the public benefit on the one hand, and the public detriment on the other.

We think that appellants take perhaps too narrow and shortened a view of the general purpose and intent of the ordinance when they argue, in effect, that the board's decision defeats that purpose and intent. The board might reasonably find that the public health, safety, morals and general welfare is promoted by affording to a considerable portion of the public an opportunity for healthful, outdoor recreation, and that the benefit to the public more than compensates for any detriment by reason of increased street congestion, and possible increased fire hazard. At any rate, we cannot

say that the board's action was a manifest abuse of discretion.

We cannot agree with appellant's contention that the proposed use of the premises in question would have an adverse effect on neighboring property values. (This is a proper element for consideration: Phillips v. Griffiths, 366 Pa. 468). The testimony on this point was in the sharpest conflict and was generally unsatisfactory, since the opinions of both experts appeared to be based largely on speculation, conjecture and surmise. The only conclusion that can safely be drawn from it is that there would be little, if any, effect on values either way.

Nor can we concur in appellants' view that the proposed use is not the "most appropriate" use of the land. There was credible testimony that the property "has an exceedingly limited use as the result of topography and general physical characteristics", and that it is not "readily adaptable to residential construction". The photographs appear to confirm this estimate. It is true there was testimony to the direct contrary. But a persuasive argument is found in the fact that the land has *not* been developed for residential purposes.

Appellants urge several other reasons in support of their argument that the board's decision is not in harmony with the general purpose and intent of the ordinance. We shall not extend this opinion by a detailed discussion of these reasons. We have considered them all, however, with great care, and believe they are without substantial merit.

Weldon Bocci Club's Appeal, 60 Montg. 277, greatly relied upon by appellants, appears to us not in point. The distinction in the methods of operation as between two entirely separate types of club is too obvious to require elaboration.

A reading of the board's excellent opinion in this case discloses that the board gave thorough, painstaking con-

sideration to the matter in all its aspects. The board took into account the potentialities in the way of traffic hazards and "lovers' lane" activities, stressed by appellants, and imposed appropriate terms and conditions to guard against them. We are unable to conclude, after careful consideration, that the board's action was a manifest abuse of discretion.

## Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter of this proceeding.

2. Conestoga Swim Club, Inc., is a club within the meaning of the term as used in the Radnor Township Zoning Ordinance of 1928, as amended.

3. The principal activity of Conestoga Swim Club, Inc., is not one customarily carried on as a business.

4. The action of the board of adjustment granting the club's application for a special exception to the terms of the ordinance was not a manifest abuse of discretion.

5. Such action of the board of adjustment must be affirmed.

6. The parties should pay their own costs.

## Decree Nisi

And now, June 30, 1955, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the action of the board of adjustment granting the application of Conestoga Swim Club, Inc., for a special exception to the terms of the Radnor Township Zoning Ordinance be, and the same is, affirmed, the parties to pay their own costs.

## Order

The prothonotary is directed to give notice immediately to the parties or their attorneys of record of the filing of the above decree nisi and, if no exceptions be filed thereto within 20 days after the service of such notice, to enter the decree nisi as a final decree.