### ROYAL CASTLE SYSTEM, Inc. v. CITY OF MIAMI BEACH.

No. 60 L 219.

Circuit Court, Dade County.

March 18, 1960.

E. F. P. Brigham and Richard B. Stone, both of Miami, for plaintiff.

Joseph A. Wanick, City Attorney, Miami Beach, for defendant.

RAY PEARSON, Circuit Judge.

This is a petition for a writ of certiorari wherein petitioner seeks to review the decision and final order of the zoning board of adjustment of the City of Miami Beach, which board affirmed the action of the city building inspector in denying the petitioner a building permit for the construction of a building, which building, in the judgment of the board, would not constitute a restaurant.

Petitioner owns lot 29 in block 2 of amended plat of Garden Subdivision in the City of Miami Beach, which lot is zoned "BAA" in a business district of the city. According to the city's zoning ordinance #289, "BAA" zoning permits the following businesses and activity —

> Restaurants
> Furniture stores
> Professional offices
> Barber shops
> Hotel and apartment houses
> Confectionery and ice cream stores
> Music stores and radio stores
> Bathing casinos
> Photograph galleries

Theatres and moving picture houses
Drug stores
Luggage shops
Cabarets
Hardware stores

The city's zoning board of adjustment denied petitioner a permit to construct its building in accordance with the plan submitted because, in its determination and judgment, the operation would not constitute a restaurant within the meaning of the zoning ordinance.

Certain testimony was received before the board from good citizens interested in the matter, but completely outside of the scope of the inquiry. This is not a case in which someone seeks to secure a variance from zoning regulations or seeks to change the zoning where citizens affected may testify to the board as to effects that such variances or changes in zoning would have on the value of surrounding properties.

The sole question in issue is whether or not on the record before the board, the operation of the petitioner constitutes a restaurant within the meaning and legislative intent of the zoning ordinance.

At the hearing before the board of adjustment, the board properly sought the advice of the able and learned city attorney, who referred them to his written opinion earlier given to the city building inspector, which opinion was made a part of the record. This opinion, although different from the judgment and opinion of this court, is a classic masterpiece in the English language, and points up very directly the problem to be resolved. The opinion reads as follows —

I have your inquiry pertaining to the above, and have examined the building plans referred to.

The question, of course, is whether the proposed enterprise would constitute a "restaurant" within the meaning of the zoning ordinance.

The question is not without some difficulty and can be determined only by ascertaining the legislative intent as manifested by the zoning ordinance in its entirety.

The ordinance clearly recognizes the proposition that while every restaurant is an eating establishment, every eating establishment is not a restaurant.

It is, of course, unnecessary for a food establishment to be an Antoine's or a Maxim's or to reflect the aura of candlelight and the rustle of silken gowns to achieve the status of a restaurant.

However, the concept can scarcely be expanded to include an operation devoted to the mass production and consumption of the commodity known as the hamburger. The circumstance that the item is possessed of qualities of superb merit, and is purveyed in surroundings of lavish decor must be regarded as adventitious. Bereft of those qualities such an establishment would not be in harmony with virtually the highest type of business zoning in the City of Miami Beach, within which the desired location is situate.

I conclude, and it is my opinion, that the proposed operation would not constitute a "restaurant" as the term is used in the ordinance, and therefore the request for a building permit should be denied.

An examination of the record made before the board of adjustment, and certified to this court, shows beyond any question that the manner and method in which petitioner intended to conduct its Royal Castle restaurant business on the lot zoned "BAA" did constitute a restaurant — specifically and directly permitted by the zoning ordinance of the City of Miami Beach. The minutes of the board reflect the following —

The board next conducted the public hearing on the appeal of Royal Castle System, Inc. represented by Richard Stone, attorney, on behalf of the property located at the southeast corner of North Meridian Avenue and Arthur Godfrey Road, Lot 29, Block 2, Amended Plat Garden Subdivision, to overrule an administrative decision which denied permission to use the property described above for construction of a building to house a Royal Castle eating establishment as shown on plans prepared by Smith and Korach, architects, consisting of three pages and dated July 22, 1959, and September 16, 1958. A public hearing was granted to the applicant on November 6, 1959.

Mr. Richard Stone, attorney, appeared for the applicant. He said that the zoning ordinance of the City of Miami Beach does not define the word "restaurant" and that, therefore, such term would have to be defined by either general law or general usage. He said that he believed the building department had refused the permit for the construction of the Royal Castle building on the premises in question based upon an advisory opinion of the city attorney, to the effect that the type of eating establishment conducted by the Royal Castle operation was not a restaurant within the intent of the zoning ordinance of the City of Miami Beach. He added that their operation pays taxes as a restaurant, is classified by the Hotel and Restaurant Commission as such, and has been found under the definition given by dozens of cities to be a restaurant operation. He then likened the counter operation of their business as one which is similar to many other luncheonettes on Arthur Godfrey Road and other areas of Miami Beach in "BAA" and other business districts.

Mr. Stone stated that the Royal Castle type of operation did not permit loitering of unsavory persons and that it was clean in every respect, that their meats were government inspected and of the highest classification. He pointed out that both the interior and the exterior of the strucure were of modern design and had been accepted with pride by other municipalities in Florida, they meet in every respect such definitions and that he, therefore, requested that the zoning board of adjustment reverse the de-

cision of the administrative officer. Mr. Stone urged that the board reach a decision at this meeting.

In response to a suggestion by Mr. Wanick, the board interrogated Mr. Stone as to the exact nature of the business and its operation. Mr. Stone replied that most of the food preparation was done on location, and the menu consisted of orange juice, tomato juice, prune juice, cereals, eggs, bacon, coffee, milk, root beer, hamburgers, chili, danish pastries, pies, donuts and soup. He added that the preparation and packaging of much of the food was done at a food commissary in Hialeah and is delivered in the early morning hours where the employees would prepare the food for actual consumption. He went on to say that the building is air-conditioned, that all service is within the building and that the people must leave their cars and come into the building to be served by countermen or waiters. He added that it was a twenty-four hour operation, that there were ten seats available at the counter and more than adequate parking facilities.

In considering the zoning ordinance affecting petitioner's property, the board of adjustment is bound by the ordinary and usual meaning of the term "restaurant", unless differently defined in its own provisions. In Henke v. Zimmer, 158 Neb. 697, 64 N. W. 2d 458, 459, the Supreme Court of Nebraska announced this rule in the following language — "Where the provisions of a zoning ordinance, as to the uses of property which are permitted or which are prohibited in certain districts, are expressed in common words of everyday use, without enlargement, restriction, or definition, they are to be interpreted and enforced according to their generally accepted meaning. 62 C.J.S. Municipal Corporations Sec. 226 (18), p. 486; 58 Am. Jur., Zoning, Sec. 11, page 945."

F. S. A. Sec. 509.241 (2) (a) defines a restaurant in this language — "(a) Every building, vehicle, or other structure of similar purpose, or any rooms or divisions in a building, vehicle or other structure of similar purpose, or any place whatsoever, that is maintained and operated as a place where food is regularly prepared, served or sold for immediate consumption on or in the vicinity of the premises is defined as, and shall be licensed as a public food service establishment . . ." The statute then goes on to state — " . . . Any reference to a restaurant in the laws of Florida shall be construed to mean a public food service establishment as herein defined unless a different intent is clearly evident."

In State v. Shoaf (1920), 102 S.E. 705, the Supreme Court of North Carolina was called upon to define a restaurant to determine whether it was exempt from the Sunday closing law required by state statute. The court defined a restaurant in the following language — " . . . A restaurant is generally understood to be a place where refreshments, food, and drink are

served. Whether they are served to guests seated at a table or on stools at a counter does not affect the definition; that being merely a detail in the operation of the restaurant. The evidence shows that the defendant had no tables in his place, but had a counter with stools arranged along in front of it, and to the guests seated on these stools he sold lunches, wieners, and egg sandwiches . . . ."

In Food Corporation v. Zoning Board of Adjustment of the City of Philadelphia, 384 Pa. 288, 121 A. 2d 94, the Supreme Court of Pennsylvania held that the applicant was clearly entitled to a permit for the erection and use of a building as and for a restaurant, defining a restaurant in the following language — " . . . A restaurant is defined in Webster's International Dictionary as 'An establishment where refreshments or meals may be procured by the public; a public eating house,' and while this no doubt assumes that the refreshments are to be eaten on the premises, that qualification is here complied with since the food *will* be consumed there even though it be in automobiles stationed thereon. The applicant was clearly entitled to a permit for the erection and use of a building as and for a 'restaurant, cafe, or catering.' "

Considering definitions from Webster's Dictionary for the meaning of terms employed in a zoning ordinance, where the term is not defined by the ordinance itself, is a practice recognized by our Florida Supreme Court. See Godson v. Town of Surfside, 8 So. 2d 497.

It is obvious that words of ordinary meaning and everyday usage cannot be given one interpretation as applied to one individual or group, and another interpretation as to a different individual or different group. As to the city and our courts being bound by such ordinary meaning, see also Shapiro v. Zoning Board of Adjustment (Pa. 1954), 105 A. 2d 299, and D.D.S. Building Association v. City of Erie (Pa. Superior Ct. 1955), 111 A. 2d 367.

The burden of showing that the board of adjustment committed error, both harmful and hurtful, to the petitioner in not proceeding in accordance with the essential requirements of law is upon the petitioner who seeks this review. The courts cannot review the *judgment*, so to speak, of the men who constitute such a municipal board — the action of the court herein in ruling as it does is based on the court's determination that reasonable men could not within the record determine and decide that the operation in question does not constitute a restaurant.

Petitioner, Royal Castle System, Inc., a Florida corporation, filed its petition for writ of certiorari in the circuit court on January 21, 1960. On the same date the petitioner filed its brief in the record of the court. On February 15, 1960 the respondents, the City of Miami Beach, a municipal corporation, et al, filed their motion to dismiss said petition. On the same date, respondents filed their brief in the matter, following the procedure of rule 4.5C. The court heard the final arguments of counsel shortly thereafter, which arguments were some three and one-half hours in duration, following which the court started its study of the record and the matters called to the court's attention in final argument, for the entry of this order and opinion.

By their motion to dismiss, the respondents raised several questions as to the proceedings before the court.

First, respondents move this court to dismiss the petition for writ of certiorari on the basis that the district court of appeal has conclusive jurisdiction of this proceeding. With this position, the court cannot agree. Under this court's interpretation of the decisions of our appellate courts in Codomo v. Shaw, 99 So. 2d 849, National Dairy Products Corporation v. Odham, 100 So. 2d 394, and Alliance for Conservation of Natural Resources v. Furen, 104 So. 2d 803, the district court does not have jurisdiction to entertain this petition for certiorari.

Second, the respondents raise the jurisdictional question that the petition must be dismissed, since it raised questions of fact requiring the taking of testimony. Likewise, with this contention, the court does not agree. There is nothing *dehors* the record made before the zoning board of adjustment — the record is attached to the petition — to which the court must resort to determine the merits of this case. Although the petition contains certain surplusage and some irrelevant matters, these have been stricken from any consideration by the court.

Respondents also contend in their motion to dismiss the petition that there are two other actions now pending in the circuit court for the same relief requested herein filed by the petitioner. Respondents have attached to their motion in support thereof copies of orders of dismissal of these cases. From the court's review of said orders, it is apparent that the actions were dismissed without prejudice, and it is clear that this matter before the court is not res adjudicata.

It is therefore ordered and adjudged —

That the motion of the respondents to dismiss the petition is denied.

That exhibit "B", being two photographs attached to the petition, are stricken.

That the court further strikes from the record any reference or matters referring to alleged political pressures as to the actions and decision of the zoning board of adjustment.

That the petition for a writ of certiorari is granted, and the order appealed from is quashed.

That this cause is remanded to the board of adjustment of respondent city for further proceedings consistent with this opinion.

That counsel for petitioner shall prepare and submit to the court a final judgment in accordance with this opinion.