# Angelo v. York Township Zoning Board

*George M. Elsesser, Jr., of Wogan, Elsesser & Yost,* for appellants.

*Donn I. Cohen, of Liverant, Senft & Cohen,* and *Raymond L. Hovis,* for intervening appellees.

SHADLE, J., July 21, 1972.—John A. Katz, as lessee of land owned by Irvin S. Naylor, applied to the York Township Zoning Hearing Board for a "special permit" (special exception) to construct and operate a club and recreational facilities on land zoned for residential use. After hearing, the board approved the application subject to certain conditions. John J. Angelo and Paul W. Moyer, adjacent property owners, appealed to this court from the action of the board. Katz, Naylor and York Township intervened as parties appellees.

Appellants petitioned the court for leave to take additional testimony on the appeal. Appellees filed answers opposing the petition, and argument thereon was had before the court en banc. We filed an order refusing the prayer of the petition and discharging the rule granted thereon. Since it was obvious that argument would be required on the merits of the appeal, we withheld the filing of an opinion until after hearing on the merits. Argument has now been had before the court en banc, and this opinion and order are filed on its behalf both

as to the petition to take additional testimony and the merits of the appeal.

## PETITION TO TAKE ADDITIONAL TESTIMONY

Appellants asserted the following grounds for their petition to take additional testimony: (1) The parties testifying at the hearing were not sworn; (2) the record was not properly certified by the board to the court; (3) the transcripts of the board hearings were not properly verified; (4) a plan forming part of the record was not included therein; (5) the board improperly made a site inspection and received additional information from the applicant in the absence of appellants; (6) the applicant improperly communicated ex parte with the board; and (7) there was not filed a record of the subsequent meeting of the board to which the case was continued for decision.

The material alleged by the fourth and seventh reasons to be missing at the time appellants filed their petition has since been supplied and is part of the record.

It will at once be noted that each and every ground asserted for taking additional testimony concerns itself with an alleged error, act or omission. Not one of them alleges inadequacy or incompleteness of the record, and there is not the slightest reference as to how the r ecord can or should be supplemented, or with what. Appellants' posture in this respect is emphasized by the fact that they allege every one of the reasons for requesting additional testimony as grounds for reversal on the merits. We shall deal with them individually in our discussion there.

The subject of additional testimony is covered by section 1009 of the Municipalities Planning Code of July 31, 1968, (No. 247), 53 PS 11009:

*"If no verbatim record of testimony* before the board was made, or if upon motion, it is shown that *proper consideration of the zoning appeal requires* the presentation of additional evidence a judge of the court may hold a hearing to receive such evidence or may remand the case to the board or refer it to a referee to receive such evidence." (Italics supplied.)

This section was interpreted in Boron Oil Company v. City of Franklin, 2 Comm. Ct. 152 (1971):

"This provision does not mean . . . that the court must receive additional evidence provided only that it is relevant. Such interpretation would not only nullify the discretion plainly conferred on the court, it would effectually remove from the Zoning Hearing Board the fact-finding function entrusted to it by the Legislature. It would further render meaningless the requirement that the proposed additional evidence be shown to be necessary for a proper consideration of the appeal. The appellant [in order to take additional testimony] was required to demonstrate that the record was incomplete either because it was refused the opportunity to be fully heard or that relevant testimony offered by it was excluded."

Since there is a verbatim record of the testimony, appellants and their evidence were fully heard, and we find the record of the proceedings to be complete for a proper consideration of the appeal, it would have been improper for us to have ordered the taking of additional testimony. It was for this reason that appellants' petition for that purpose was refused. However, it does not follow, as appellees argue, that because we find the record adequate for consideration, this means that the ultimate action of the board inevitably was correct. The merits of the application and its disposition by the board still remain for consideration.

## THE MERITS OF THE APPEAL

The factual situation regarding the area, the proposed project and the disposition of the board are admirably set forth in the written decision of the board.

Appellants' attack is marshalled under four main headings. The first is that the applicant's club is not, in fact, a permitted use which is entitled to a special exception under the ordinance. There is no dispute that "club room, club grounds, meeting hall" are enumerated uses permitted on special exception under section 200 of the ordinance. However, appellants argue that not any and all uses may be permitted simply because conducted by a "club," and that the applicant's project is not, in fact, a "club" in any event. They contend that because the organization is not yet in existence, and the applicant will have the right to select and control admissions to membership and the conduct of its affairs and will receive the income and pay the expenses of the operation, the project is merely a private business enterprise which is not a permitted use.

It is to be noted that by condition 12 of the board's decision, the approval is specifically conditioned upon the formation and operation of the club in accordance with the recited details.

The ambiguity resulting from zoning ordinances enumerating as a permitted *use* such *organizations* or *buildings* as "clubs" or "club houses," without further definition has troubled the courts as it did the board in this case. Permission for a club does not indicate what type of activity it may carry on. It can hardly be argued with reason, to use a ridiculous example, that anything so offensive as a pig farm or glue factory could be sanctioned in a residence district simply because it is conducted by a club. D.B.S. Building Association v. Erie, 177 Pa. Superior Ct. 487 (1955), noted this

problem and concluded that a club in this context was intended to mean an association of persons for the promotion of some common object, and not the building or premises occupied by the group. However, the factual situation there is of no help to us here.

It is clear that the mere fact that a charge is made for the use of the facilities and that the proprietor will thereby derive revenue therefrom does not convert what would otherwise be a recreational facility into a business. In Shapiro v. Zoning Board of Adjustment, 377 Pa. 621 (1954), in speaking of a zoning ordinance which permitted an athletic or amusement park in a residential district, the court said:

". . . (There is no) merit in the . . . contention that the fact that the . . . [applicant] intends to make a charge for the use of the amusement devices renders the operation something other than an amusement park and, consequently, prohibited by the zoning laws. . . . '. . . if the legislative body had so intended it could readily, and most certainly would, have included such a modification or restriction.' This conclusion is especially indicated when we consider that even plainly expressed restrictions imposed by zoning ordinances are strictly construed. . . ."

The point of strict construction of the ordinance against restrictions was stressed in United Cerebral Palsy Association v. Zoning Board of Adjustment, 382 Pa. 67 (1955). There, under a zoning ordinance permitting clubhouses, schools and dormitories in a residence district, the court noted that these terms are presumed to be used in the "broadest possible sense since restrictions imposed by zoning ordinances must be strictly construed," and that, therefore, "A 'club' . . . is, in substance, merely an organization or association of persons who meet or live together for the purpose of social intercourse or some other common object

such as the pursuit of literature, science, politics or good fellowship."

More clearly in point on the effect of profit from the operation of a swimming club is Parry v. Lower Gwynedd Township, 78 Montg. 220 (1961). The court there said:

"The appellants object that the club is actually organized as a profit corporation and as such is not permitted in . . . [such a] residence district [wherein a use for club or recreational purposes is authorized as a special exception]. With this contention the court cannot agree. The zoning ordinance provides for other uses in . . . [such a] residence district which may be carried on for profit. . . . The restrictions imposed by zoning ordinances are to be strictly construed and, had the township supervisors intended that only those clubs organized on a nonprofit basis were to be permitted in . . . [such] resident districts, the restriction should have been incorporated . . ."

As the board here noted, this ordinance likewise permits in the residence district such profit-making activities as hospitals, convalescent homes, public utility service structures, cemeteries, parking lots and passenger transportation terminals. There simply is no basis for concluding that clubs producing income or profit were not intended to be permitted.

Appellants cite as controlling Kotzin v. Plymouth Township Zoning Board of Adjustment, 395 Pa. 125 (1959). However, there the zoning board refused to approve a private swimming club as a special exception limited to a "noncommercial recreational use," and the court affirmed the discretionary action of the board. It did so because *the board* envisioned that the project "manifested all the objections that would have characterized a similar profit-making commercial facility," notwithstanding the fact that it was to be operated by

a nonprofit corporation. That decision certainly is not authority for the proposition that an *unrestricted* and undefined club never can operate a swimming and recreational facility simply because a profit is derived therefrom. Kotzin specifically noted: "*If unobjectionable* in its use, it would be permitted if a special exception were obtained—but where the actual use *is objectionable* the fact that the objectionable use is by a nonprofit corporation does not merit the grant of the exception." (Italics supplied.)

Clearly in point on remarkably identical facts is Steppler v. Board of Adjustment of Radnor Township, 5 D. & C. 2d 8 (1955). There the court affirmed the grant by the board of a special exception relating in more restrictive terms to a "club, fraternity house or lodge, except where the principal activity is one customarily carried on as a business." The project was a private membership swimming club and picnic area with the usual appurtenances to be operated by a nonprofit corporation. Virtually the same objections were raised there as here. While this decision is not binding, it is highly persuasive.

Appellants further contend that the instant project is an indoor and/or outdoor recreational "establishment," which is not defined, but is not permitted in a residence district under section 200 of the ordinance. Appellees counter that the operation is an outdoor recreational "use," defined by section 501 to include a beach, swimming pool, tennis court, riding stable, golf course or a drive-in theater, and that section 360, by providing for visual screening of an outdoor recreational use which adjoins or is in a residential zone, therefore specifically authorizes the swimming pool and tennis courts here involved in a residential district. The ordinance is ambiguous on this point, but we find it unnecessary to reach it. In our opinion the project

qualifies for a special exception as a club operation if it otherwise meets the criteria therefor.

Appellants' second argument is that they were "denied an impartial hearing" because the township solicitor represented both the township and the zoning hearing board "and was consulted by the Zoning Hearing Board for advice in making its decision . . ." In the first place, there is nothing in the record to indicate that the solicitor participated in any way in any of the proceedings, and in his brief on behalf of the township he denies that he did.

Appellants cite Limekiln Golf Course, Inc. v. Zoning Board of Adjustment of Horsham Township, 1 Comm. Ct. 499 (1971), which stated that the practice of the municipal solicitor also representing the zoning board was disapproved as creating an unwarranted occasion for partiality, since the municipality may have a position adverse to a party to the proceeding. However, the effect of this language was limited in Cherbel Realty Corporation v. Zoning Hearing Board, 4 Comm. Ct. 137 (1972), as follows:

"Although this court in Limekiln . . . disapproved the practice of counsel serving both an interested municipality and the Zoning Board, we did not hold that such practice is, without more, a denial of due process. In the absence of any rulings by this Board founded on the township solicitor's advice actually harmful to the appellant, we do not feel compelled to remand."

Since in this case there is not the least evidence of any participation by the township solicitor, much less any reliance on his advice by the board in rulings harmful to appellants, we consider this argument to be without merit.

In their third argument, appellants contend that the procedural requirements of the Municipalities Planning

Code were not complied with. They complain first that a building elevation plan and a transcript of the proceedings of the November 23, 1971, meeting were not returned by the board to the prothonotary at the same time as the rest of the records, but were later added thereto in some unexplained manner. Since there is no dispute that these two items are authentic, we are unable to perceive the significance of the manner and time of their arrival into the hands of the prothonotary.

Appellants next argue that the case record was not properly certified by the board. They point to section 1005(b) of the code, supra, 53 PS §11005, which provides that "Upon filing of a zoning appeal, the prothonotary . . . shall . . . send to the board . . . [a] writ of certiorari commanding the board . . . to certify to the court its entire record . . . or a true and complete copy thereof . . ."

It is true that some zoning boards and other administrative bodies have adopted a practice of endorsing on records returned by them on appeal a statement by which it is "certified" that the records are true and complete. However, in the absence of any allegation or indication that the records returned are incomplete or incorrect, we are unwilling to hold that there is any more magic in the word "certify" in section 1005 than to require merely that the entire record be returned and filed. There is no allegation or indication here.

Appellants then object that the transcripts of the testimony failed to show that the persons who spoke at the hearing were sworn, and assert that they were not, in fact, sworn. The transcripts fail to show that there was any request or objection in this regard by counsel for appellants, and if the applicant's testimony is infirm in this regard, so too would be that of appellants' six witnesses who spoke in opposition.

It is quite true that section 908 of the code, supra, 53 PS §10908, provides for the board to conduct hearings, and empowers the chairman or hearing officer to administer oaths. However, it also provides that formal rules of evidence shall not apply, thus indicating that such neighborhood proceedings need not be conducted with the solemnity of court trials. The transcripts appear to indicate that aside from the extensive arguments of counsel, which obviously need not have been under oath, the interested parties were examined and cross-examined with complete regularity by counsel, and scrupulous attempts were made to give everyone a full chance to be heard. It likewise must be remembered that at such hearings very little of the oral testimony consists of facts to be proved, and most of it merely clarifies documents or comprises expressions of personal preferences, opinions, intentions and desires.

Cases such as Com. v. Snavely, 10 Lebanon 206 (1964), and New Castle v. Casacchia, 58 D. & C. 184 (1947), cited by appellants, are not in point. They are criminal prosecutions involving penal sanctions, in which due process in all its aspects is of the essence. While due process of course is required in zoning matters, the nature and purpose of the two types of proceedings are entirely different.

In Jackson Zoning Appeal, 85 York 152 (1971), this court expressed the view that "The important thing is not whether the testimony was sworn or unsworn but whether there was sufficient credible evidence before the Board upon which it based its findings. In Re May Morris, 66 Lack. Jur. 106 (1965)." It is true that that statement was dictum, but we adhere to that approach. We think witnesses at a zoning hearing before the board should be sworn before testifying, and a contrary practice is disapproved, if for no other reason than to

discourage the free-wheeling verbal brawling which often occurs. However, we are unable in this case to perceive how appellants were in the least harmed by any failure to administer an oath to the parties before they spoke, and we can conceive of nothing to be gained by sending the case back for such persons to repeat under oath what they already have said.

Appellants also contend that the transcripts of the testimony are not properly verified. Each of the two contain a signed statement by a named person that it is "a true and correct transcript of a recording" made of the hearing in question. Apparently, the board here followed the instructions of section 908 of the code, supra, 53 PS §10908, to "keep a record of the proceedings, either stenographically or by sound recording, and a transcript of the proceedings . . . shall be made. . . ."

It is quite true, as appellant argue, that there is nothing to show who made the *recording*, how it was made, or that it is correct and complete. However, in these days of extreme shortages of reporters of testimony, the recording requirements of the code must be interpreted with reasonableness and common sense. In the absence of any allegation that the transcripts are incomplete or incorrect, we are unwilling to forge a requirement that the transcribing stenographer must personally record the proceedings, or that whoever operated the recorder must file a separate affidavit that he did not perform some electronic legerdemain.

Finally under this heading, appellants maintain that the board improperly viewed the site and received "additional information supplied by the applicant," both in their absence. They cite section 908(8) of the code, supra, 53 PS §10908, as follows:

"The board . . . shall not communicate . . . with

any party or his representatives in connection with any issue involved *except upon notice and opportunity for all parties to participate,* shall not take notice of any communication . . . or other materials unless the parties are afforded an opportunity to contest the material so noticed and *shall not inspect the site or its surroundings with any party or his representative unless all parties are given an opportunity to be present."*

At the first hearing, in prefacing a motion to defer the decision to the next meeting, one of the board members stated on the record that ". . . I personally would like to have an opportunity to see elevation drawings of the building, and I believe that the Board should take it upon themselves to make a view of *the proposed site. . . ."* The record of the subsequent meeting shows that the board had in the interim viewed the site, and the elevation drawing in question was presented, examined and discussed by all parties. It is undisputed that none of the parties nor their counsel were present at the site view.

Appellants now contend that such an unattended site view and the delivery by the applicant to the board of the elevation drawing violated section 908(8) of the code. This simply is not correct. The purpose of that section is merely to prevent ex parte communication with and influence upon the board. It certainly is not violated when the board, in appellants' presence, requested submission of the drawing, and it later was examined and discussed by all parties. As to the site view, the section by its expressed terms prohibits such action only in the presence of some but less than all parties. There is no inhibition whatever of the board alone examining the premises in the absence of all parties, and such action should be encouraged.

Appellants' fourth and final argument is that the

provisions of the ordinance were not complied with. Section 401 requires that an application for a special exception include a site plan showing the location of structures, open land, ground floor plans and elevations and names and addresses of adjacent owners. Appellants contend that the applicant's plans fail to show dimensions and setback distances, that a portion of the swimming pool may extend into a street right-of-way, that it is not shown which is the "rear yard" of the premises, and that the elevation plan is "inadequate."

We cannot help but conclude that these objections are specious. It is true that relevant distances are not set forth in numbers. However, the site plan clearly shows that it is drawn to a stated scale, and measurements based thereon reveal every relevant dimension and set-back distance, including the fact that the swimming pool clears the street right-of-way. The rear yard obviously is that behind the portion of the building into which the main entrance opens. While the elevation drawing shows only one facade, it is fully adequate, when compared with the floor plan, to demonstrate the size, height, elevation, bulk and appearance of the proposed building.

Section 443 of the ordinance requires that before granting a special exception the board must find that the proposed use will be in harmony with the orderly and appropriate development of the zone with reference to location in respect to streets, the nature and intensity of the operations involved, adequate water, sewerage, storm drainage, fire and police protection, traffic congestion, and effect on adjacent land and buildings. Appellants argue that the findings of the board with respect to these considerations either were unsupported by any evidence or were contrary to evidence presented thereon.

Without repeating the 10-page opinion of the board setting forth its findings and conclusions, it is obvious that it is remarkable and outstanding in the care and detail by which it stated and considered each and every one of the above criteria. These included the location and surroundings of the site, adjacent uses, the characteristics of the project, its proximity to or isolation from surroundings, the objections and apprehensions of neighbors, and the findings and conclusions of the board as to traffic, water, sewerage, drainage and audible and visible effect on surrounding properties. Furthermore, with admirable foresight and caution the board attached 12 conditions to its approval regarding access, screening, noise, cleanliness, parking, lighting, surface water drainage and on-site activities. Sections 470 and 471 of the ordinance require the township engineer to approve traffic access, grades and surface drainage. The board carefully covered these items in its findings and conditions, and an examination of the testimony and plans and the information presumably available from a view of the site amply supports its conclusions. Appellants seem to lay particular stress on the fact that some of the objectors expressed their views, apprehensions and opinions as to traffic, noise, adverse effect on property values and distaste for the project. However, so long as this testimony was heard and considered, as it was, it must be remembered that they were merely personal views, apprehensions and opinions and the board was not legally required to accept them.

This opinion already has become inordinately long because of the multitude of objections raised by appellants which required consideration. However, it cannot be concluded without a reminder of the legal posture in which the case comes before this court.

On an application for a special exception, as distin-

guished from a variance, the burden is not on the applicant to establish that the proposed use would not adversely affect the health, safety and morals of the community, but on the objectors to show the contrary: Archbishop O'Hara's Appeal, 389 Pa. 35 (1957). When the applicant shows that the proposed use is permitted as a special exception, it becomes the duty of the board to grant the permit unless the intended use would damage the health, safety and morals of the neighborhood, as to which the burden is not on the landowner but upon those who oppose the issuance of the special exception: Temple University v. Zoning Board of Adjustment, 414 Pa. 191 (1964).

On an overview of the whole situation, as portrayed by the cold record before us, it is conceivable that we might have hesitated with considerable concern to approve the installation of a recreational facility of this type, however attractive, in what seems now to be, but cannot forever remain, a remote bucolic area of apparently isolated, beautiful and probably expensive homes. *But this is not our function.* The board, composed of citizens of the vicinity, saw the location, is familiar with the area, heard testimony both pro and con, considered the advantages and disadvantages and reached carefully reasoned conclusions.

In such a situation, we are bound by the well-settled principles most recently articulated in Cohen v. Philadelphia Zoning Board of Adjustment, 3 Comm. Ct. 50 (1971). It was there once more repeated that where no additional evidence is taken by the court of common pleas on an appeal from the action of a zoning board of adjustment, the scope of review by the court is limited to a determination whether the board abused its discretion or committed an error of law. The court in that case cogently added:

"Every court reviewing a decision of a local zoning

board should demonstrate modest reluctance in trying to measure and assess the multitude of factors and considerations which combine to effect the final decision of such board. Where no additional testimony was received in judicial proceeding, both the lower court and this [appellate] court must exercise self-restraint as to substituting our opinions far removed from the particular zoning hearing for the well-considered decision of the local officials."

Judge Blakey took no part in the consideration or decision of this case.

### ORDER

And now, to wit, July 21, 1972, the decision of the zoning hearing board is affirmed. An exception is noted for appellants.