## Towne and Country Club v. Buckingham Township Zoning Board of Adjustment

*Ward F. Clark*, for appellant.

*John J. Bodley*, for appellee.

SATTERTHWAITE, J., May 22, 1959.—This zoning case involves the construction and application of certain ordinance provisions as related to off-property directional signs pointing the way along various country roads to appellants' swimming and recreational club located in a rural part of Buckingham

Township. From the record of a hearing de novo, the hearing judge makes the following

*Findings of Fact*

1. Individual appellants, Ben Kaplan and Sol Weiss, are the owners of a tract of approximately 25 acres of land on Creek Road, Buckingham Township, this county, upon which the corporate appellant, Towne and Country Club, operates a profit-making enterprise consisting of a country nonresident or day recreation center, providing facilities for "members" for swiming, boating, various athletic events, picnicing, refreshments and indoor recreation.

2. Said enterprise is commercial in nature, and the individual appellants, who are officers, directors and the managing operators of the corporate appellant, solicit new "membership" on a seasonal basis of patrons who come largely from the northeast area of metropolitan Philadelphia.

3. The site is accessible only by private transportation and is several miles by rural secondary roads from the main arterial State highways serving the general area of central Bucks County from Philadelphia.

4. Since the spring of 1956 when appellants commenced their venture, they have provided certain off-property directional signs to guide persons unfamiliar with the location. Seven of these are located on posts or poles at various road intersections within Buckingham Township.

5. Appellants have never applied for or received permits for the erection and maintenance of said signs from the township zoning administrative officer.

6. Each of said signs is substantially identical and consists of a rectangular wooden board approximately 36 inches long by six inches wide, with pointed and notched respective ends for indicator purposes. Against a white or yellow background is painted thereon in

green lettering solely the words "Towne & Country Club."

7. On June 7, 1958, the zoning administrative officer of Buckingham Township gave written notice to appellants that said signs were erected and maintained in violation of the township's zoning ordinance and directed removal thereof.

8. On June 9, 1958, appellants filed their appeal from this order of the zoning administrative officer with the township's zoning board of adjustment and after subsequent correspondence a hearing was held thereon before said board on July 31, 1958, the matter being treated by the board as an application for a variance.

9. On August 3, 1958, said board of adjustment entered an order denying the variance. No findings of fact or reasons for the decision accompanied the same so far as the record discloses.

10. The within appeal was filed in this court on August 15, 1958, and a hearing was held thereon by the undersigned on October 16, 1958.

11. Section 1300 of the Buckingham Township Zoning Ordinance of 1951 generally prescribes the construction of particular words and phrases used in the ordinance "unless otherwise expressly stated." Subparagraph 22 thereof defines the word "signs" as follows:

"22. *Signs.* Sign, as used in this ordinance, comprises billboards, posters, or advertising structure, whether of wood, metal, plastic, rubber, cardboard, paper and also includes balloons, bunting and ribbon."

12. Article IX of the ordinance, comprising sections 900 to 904, inclusive, deals exclusively with signs. Section 900 thereof requires that they conform to that article. Section 901 provides, in part, as follows:

"Section 901. *Use and Location Regulations.* The following types of signs, and no other shall be permitted:

"1. *Official traffic signs.*

"2. *Professional, accessory use, home occupation or name signs* . . . provided that the area on one side of any such sign shall not exceed two (2) square feet.

"3. *Identification signs* for schools, churches, hospitals, or similar institutions, and for clubs, lodges, farms, estates, or similar uses, provided that the area of one side of any such sign shall not exceed twelve (12) square feet.

"4. *Real Estate signs* . . . and signs indicating the location and direction of premises in the process of development, provided the area on one side of any such sign shall not exceed twenty-four (24) square feet.

"5. *Temporary* signs of contractors . . .

"6. *Business or industrial signs* may be erected and maintained in conjunction with a commercial or industrial use, provided (a) that the area on one side of any such sign shall not exceed fifty (50) square feet, unless authorized as a special exception, and (b) such sign is erected only on the premises on which the use, to which the sign relates, is conducted."

Section 902 establishes certain general regulations as to the type and particular location of signs relative to streets, etc., the requirements of which apparently are not presently involved. Section 903 makes cross reference to other sections of the ordinance relating to permits, but expressly exempts signs described in subparagraphs one to five, inclusive, of section 901, from permit requirements. Section 904 contains nonconforming use provisions applicable to signs erected before the effective date of the ordinance in 1951.

13. Appellants' signs are located respectively in zoning classification districts as follows: One in an R-2-residence district; five others in an A-agricultural district, and the seventh in a C-commercial district.

14. In A-agricultural districts a building may be erected or used and a lot may be used or occupied

under section 301 for any of the particular purposes therein specified "and no other." Subparagraph 10 of section 301 provides as follows:

"10. Signs when erected and maintained in accordance with the provisions of Article IX of this Ordinance."

Similar provisions, by reference, are made in section 501 for R-2-residence districts and in section 601 for C-commercial districts.

## Discussion

When appellants received the cease and desist order from the zoning officer in this case, they quite properly appealed therefrom to the board of adjustment: Section 2007 of The Second Class Township Code of May 1, 1933, P. L. 103, 53 PS §67007, as amended by section 22 of the Act of June 1, 1956, P. L. 2021. Unfortunately, however, their letter of appeal although referring to the zoning officer's order as the occasion therefor, tacitly assumed the prohibitory effect of the sign regulations of the zoning ordinance as applied to the markers in question. Appellants approached the board informally and apparently without advice of counsel; in effect, they asked for a variance on hardship grounds. That body accordingly and understandably disposed of the case on that basis, although it should be noted that had its decision been accompanied by a statement of its findings and reasons, as this court has frequently admonished boards of adjustment to do, in all probability some attention would have been given to the real question in the case: Was the cease and desist order proper? This question the board simply did not answer.

Similarly, on appeal to this court, the hearing was conducted by all concerned, including the hearing judge, on the assumption that variance and constitutional problems were the crucial issues involved, and it was not until the ordinance provisions were studied, after appellants' brief had called attention to the construc-

tion question hereinafter discussed, that it was realized that the applicability of the sign provisions of the ordinance to appellant's directional indicators was open to interpretation and should not be assumed to prohibit the same without considered decision of the matter. The hearing judge now believes that in fact appellants' directional signs were not interdicted by the ordinance. Accordingly, a substantial part of the lengthy record of the hearing herein relating to hardship and public interest was unnecessary. It is to be regretted that a more analytical approach to the problem involved was not taken by appellants in their initial appeal to the board, and by the board in its disposition of the matter. Had the case been more adequately handled and a proper record made at the municipal level, the within appeal quite possibly could have been disposed of by argument on the record of the board without further hearing in this court on what have proved to be purely academic questions.

Were it not for the ordinance definition of "signs" in section 1300(22), appellants' guide markers would seem to be within the restrictive provisions of section 901(6). In view of the commercial nature of appellants' enterprise, they might, in the absence of such definition, be fairly considered as "business or industrial signs." Notwithstanding that they are purely directional in nature, section 901(6) does not except directional signs as did the corresponding ordinance provisions in Bristol Township v. Zoning Board of Adjustment, 8 Bucks 146, and that decision accordingly has no present relevancy.

But section 901(6) applies only to signs as defined in the ordinance, i.e., "billboards, posters or advertising structure," section 1300(22), and the devices in question fit none of these categories. They are obviously not billboards. See Commonwealth v. Cohen, 39 D. & C. 575, and compare Liggett's Petition, 291 Pa. 109. Nor

can they reasonably be said to be posters or advertising structures. While they may serve appellants' private pecuniary interests by pointing out the route to their place of business for prospective patrons or their guests who may be unfamiliar with the location thereof, they are not advertising media in the common usage of that term. In themselves, they have only directional and identification characteristics. They refer to appellants' place of business solely by name and neither set forth any information as to the nature thereof nor make any importunity to the general public to resort thereto. In short, if one did not know otherwise what the "Towne & Country Club" might be, he certainly would in no way be enlightened by the signs in question.

Restrictions of a zoning ordinance in derogation of rights of private property must be strictly construed: Philadelphia Art Alliance v. Philadelphia Zoning Board of Adjustment, 377 Pa. 144, 149-150; United Cerebral Palsy Association v. Zoning Board of Adjustment, 382 Pa. 67, 70-71, and cases respectively therein cited. With this principle in mind, the hearing judge believes that section 901(6) has no application in the instant case when read in connection with section 1300(22).

This conclusion does not completely dispose of the case, however. As noted in the findings, supra, the use regulations applicable to each of the respective district classifications in which the signs are located are exclusive in nature; they authorize the particular uses therein specified "and no other," and it has been held under such a scheme that all uses not permitted by the ordinance are excluded by implication: Silver v. Zoning Board of Adjustment, 381 Pa. 41, 45. Before appellants' signs are permissible in such districts, therefore, it must appear that they are expressly or by necessary and reasonable implication within the uses so specifically enumerated.

At first glance it might seem that these considera-

tions exclude the signs in controversy. If they are not "signs" for purposes of section 901(6) as demonstrated above, it might offhand be reasoned that they are not "signs" for any of the provisions of article IX which are incorporated by reference in sections 301, 501 and 601 as permissible uses in A-agricultural, R-2 residence and C-commercial districts respectively. However, closer analysis reveals that this result does not follow under the ordinance language in question. Section 1300 provides that the definitions therein contained, including that for "signs" above mentioned, shall be construed to be the meanings of the respective words and phrases so referred to throughout the ordinance, subject, however, to the further qualification: "unless otherwise expressly stated." No expression to the contrary is contained in section 901(6) which, therefore, as already noted, has no present application.

But other subparagraphs of section 901 do comprehend and authorize types of signs which are not within the definition of section 1300(22); specifically, subparagraph (3) thereof authorizes "Identification signs .. . for clubs, lodges, farms, estates, or similar uses" if not more than 12 square feet in area, and no requirement is made therein that such permitted sign be erected only on the premises to which the sign relates, as is required by way of contrast in subparagraph (6) pertaining to business or industrial signs. The hearing judge believes that appellants' directional signs may properly be considered as identification within this phraseology which necessarily broadens in this instance the sign definition of section 1300(22). He also believes that appellants' business premises would be within the scope of "clubs, lodges . . . or similar uses," that the scattered and off-property location of appellants' identification signs is immaterial, that the area limitations have been met, that they are authorized by section 901(3) and hence that they are permitted uses

in the respective classification districts in which they have been erected, under sections 301, 501 and 601. It should also be noted that they are exempt from permit requirements under section 903.

Moreover, the appropriateness of these interpretations would seem to be supported by constitutional considerations. Serious problems of discrimination and unreasonable classification would be presented if appellants' signs were excluded by ordinance provisions which at the same time permitted other signs of comparable or greater size and not radically dissimilar purpose. For example, the categories of either "official traffic signs" or "identification signs" presumably constitute the authority for the township's own road signboards under the ordinance. These not only have directional and identification functions, but also are substantially identical in size, appearance and location to appellants' signs. Likewise, there is no legally significant difference in size and purpose between authorized professional and other home occupation or identification signs and those presently in controversy. Similarly, and removing any remaining doubt about the question, no possible justification for discriminatorily prohibiting appellants' signs can exist if real estate developers may erect and maintain "signs indicating the location and direction of premises in the process of development" up to 24 square feet in area, as authorized by section 901(4).

## Conclusions of Law

1. Under the circumstances disclosed in the within record, appellants' signs are identification signs, permissible under section 901(3) of the zoning ordinance.

2. Said signs are within the area limitations of section 901(3).

3. The fact that said signs are not located solely upon appellants' premises is of no legal significance.

4. No permits were necessary for the erection and maintenance of said signs under section 903 of said ordinance.

5. The cease and desist order of the zoning administrative officer to appellants on June 7, 1958, was improper and should be vacated and overruled.

6. The order of the zoning board of adjustment of August 3, 1958, was improvidently entered and should be vacated.

7. The within appeal should be sustained, each party to pay their or its own costs.

### Order Nisi

And now, May 22, 1959, for the reasons stated in the foregoing opinion, it is hereby ordered and decreed that the within appeal be sustained, that the cease and desist order issued to appellants by the zoning administrative officer on June 7, 1958, be vacated and overruled, that the order of the zoning board of adjustment entered in this case on August 3, 1958, be vacated, and that each party to the within appeal pay its or their own costs.

This order shall be entered as an order nisi and shall become the final order of the court unless exceptions be filed hereto within 20 days from this date. The prothonotary shall forthwith serve copies of the within order and the foregoing opinion upon counsel of record, in person or by mail.