## STATE v. FRED SHOAF.

(Filed 7 April, 1920.)

**1. Sunday—Hotels—Restaurants—Cafes—Statutes.**

Under a statute, local to a county, prohibiting shops, stores, etc., from being kept open on Sunday for the sale of any goods, wares or merchandise within four miles of any incorporated city or town within the county, providing that the act shall not apply to hotels or boarding houses, or restaurants or cafes furnishing meals to actual guests, when not otherwise prohibited by law from being kept open on Sunday, *Held,* the words "restaurants or cafes" are substantially synonymous, and a place where stools and counters only were used for the service to customers of lunches, "weiners" and egg sandwiches, comes within the definition of the exception; and the sale of these not being unlawful, the fact that the place was called a "weiner joint" does not render it so.

**2. Same—Evidence—Nonsuit—Trials.**

A "weiner" is a small sausage of unknown contents, commonly called a "hot dog," and to a great many people is a palatable and appetising

STATE *v.* SHOAF.

article of food, and though a "joint" is regarded as a place usually kept for unlawful meetings, the term "weiner joint" does not render a "restaurant or cafe," so denominated in the evidence, an unlawful place, where all of the evidence shows that it was conducted properly and in an orderly manner for furnishing lunches, etc., to its customers, and where a statute excepts "restaurants and cafes," etc., from the operation of its provision prohibiting keeping stores, etc., open on Sunday, it is error for the judge to refuse defendant's motion to nonsuit upon the evidence which should have been granted and is equivalent to a verdict of not guilty. Gregory's Supplement, sec 3265a.

INDICTMENT, tried before *Ray, J.,* and a jury, at January Term, 1920, of FORSYTH.

Defendant was charged with the offense of "unlawfully and wilfully exposing for sale his goods and keeping open his place of business on Sunday" in violation of Public-Local Laws of 1919, ch. 320, which reads as follows, omitting immaterial parts thereof: "No person, firm, or corporation in Forsyth County shall expose for sale, sell, or offer for sale on Sunday any goods, wares, or merchandise within four miles of the corporate limits of any incorporated town or city, and no shop, store, or other place of business in which goods, wares, or merchandise of any kind are kept for sale shall keep open doors from 12 o'clock Saturday night until 12 o'clock Sunday night: Provided, that this act shall not be construed to apply to hotels or boarding-houses, or to restaurants or cafes furnishing meals to actual guests, where the same are not otherwise prohibited by law from keeping open on Sunday."

The only witness was E. E. Wooten, who testified: "I know Fred Shoaf, the defendant. He runs what is called a 'weiner joint' at Hanestown, a village about three miles west of Winston-Salem. I have seen defendant selling lunches, weiners, and egg sandwiches on Friday night, Saturdays, and Sundays. I did not take the names of the people who bought from him. I saw him selling these things on two different Sundays within the last six months at Hanestown, in Forsyth County. He had no tables in his place, but had a counter with stools along in front of it, and his customers occupied those stools while eating."

The place at which defendant sold these meals, or lunches, was within two miles of the corporate limits of Winston-Salem. At the close of the evidence the defendant moved for judgment of nonsuit—motion denied, and he excepted. He was convicted, and appealed from the judgment.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*W. T. Wilson and J. B. Craver for defendant.*

WALKER, J., after stating the case as above: The facts in this case bring it directly within the purview of the exemption and not within the prohibition of the statute, being excepted from it by the proviso.

The term "restaurant and cafe," in common parlance, and, we think, as used in the statute, are substantially synonymous. A restaurant is generally understood to be a place where refreshments, food and drink are served. Whether they are served to guests seated at a table or on stools at a counter does not affect the definition, that being merely a detail in the operation of the restaurant. The evidence shows that the defendant had no tables in his place, but had a counter with stools ranged along in front of it, and to the guests seated on these stools he sold lunches, weiners, and egg sandwiches. This, it seems to us, was strictly a restaurant business within the approved definition as shown in the dictionaries and in 7 Words and Phrases, p. 6180. While the word "restaurant" has no strictly defined meaning, it seems to be used indiscriminately as a name for all places where refreshments can be had, from a mere eating-house and cook-shop, to any other place where eatables are furnished to be consumed on the premises. *Richards v. W. Fire and M. Ins. Co.,* 60 Mich., 420; *Lewis v. Hitchcock,* 10 Fed., 4. It has been defined as a place to which a person resorts for the temporary purpose of obtaining a meal or something to eat. *People v. Jones,* 54 Barb., 311, 317, and a restaurant keeper as a caterer, who keeps a place for serving meals, and provides, prepares, and cooks raw materials to suit the taste of his patrons. *In re Ah Yow,* 59 Fed., 561, 562; *Swift & Co. v. Tempelos,* 178 N. C., 487; 7 Words & Phrases, 6180 and 6181. The "weiner" of the witness is a small sausage of unknown contents, and is here commonly called a "hot dog," as stated in the case. To a great many people it is a palatable and appetizing article of food, notwithstanding the implication attaching to one of its names. So far as the case shows, the defendant's place of business was conducted in an orderly manner, and he sold nothing but simple food to his customers. He was conducting a restaurant and is fully protected by the words of the proviso exempting that class of business from the operation of the statute.

The witness called the place a "weiner joint," but there is nothing in this case to show that to be a just or correct designation of it, if it was meant by the term to imply that the restaurant was not kept in a decent or orderly manner. A "joint" is usually regarded as a place of meeting, or resort, for persons engaged in evil and secret practices of any kind, as a tramps' joint, such a place as is usually kept by Chinese for the accommodation of persons addicted to the habit of opium smoking, and where they are furnished with pipes, opium, etc., for that purpose, and called an opium joint, or generally speaking, a rendezvous for persons

of evil habits and practices. If, in this sense, the words were intended as an opprobrious epithet, the evidence utterly fails to disclose that this place was not properly conducted, in every way, or that there has been the slightest disturbance of the peace and quiet of the community by reason of any disorderly or improper conduct therein. So far as appears there was absolutely nothing done that would mar in the least the proper and peaceful observance of the Sabbath, no more than there would be in a well conducted hotel or in one's home. Food and drink are necessary to the sustenance of man and the statute was not intended to prohibit the furnishing of them to patrons when there is, in no other respect, a violation of the law alleged or shown.

It was error to submit the case to the jury and to refuse the nonsuit. The verdict will be set aside, and judgment of nonsuit will be entered in the Superior Court, which shall have the force and effect, as provided by statute (Acts of 1913, ch. 73; Gregory's Suppl., sec. 3265a), of a verdict of not guilty.

Error.