126 So.2d 595 (1961)
CITY OF MIAMI BEACH, a Municipal corporation; Morris N. Lipp, Joe Cohen, Leo Eisenstein, Joseph H. Gardner and Ben Giller, as members of and constituting the Board of Adjustment of the City of Miami Beach, Appellants,
v.
ROYAL CASTLE SYSTEM, INC., a Florida corporation, Appellee.
No. 60-260.
District Court of Appeal of Florida. Third District.
January 31, 1961.
Rehearing Denied February 24, 1961.
Joseph A. Wanick, City Atty., Miami Beach, for appellants.
Brigham, Wright & Goodwin, Stone & Bittel, Miami, for appellee.
CARROLL, CHAS., Judge.
The appellants, who are the City of Miami Beach and the members of its Zoning Board of Adjustment, appeal from a judgment of the circuit court in certiorari quashing a ruling of the Board which had denied appellee a building permit.
Appellee operates a chain of street-side lunch counter type eating places specializing in hamburgers, under the name of Royal Castle. The Board, relying on an opinion to that effect by the city attorney, concluded that such establishments were not restaurants, and thereupon denied a request for a permit to build a "Royal Castle" in an area of the city in which the zoning permitted "restaurants." The issues and questions involved on the appeal may be shown sufficiently by quoting from the opinion of the learned circuit judge, which accompanied the judgment, as follows:
"* * * Petitioner owns Lot 29 in Block 2 of Amended Plat of Garden Subdivision in the City of Miami Beach, which lot is zoned BAA in a business district of said city. According to zoning ordinance No. 289 of the City of Miami Beach, BAA zoning permits the following such businesses and activity:
 "Restaurants
 Furniture Stores
 Professional Offices
 Barber Shops
 Hotel and Apartment Houses
 Confectionery and ice cream stores
 Music stores and radio stores
 Bathing casinos
 Photograph Galleries
 Theatres and Moving Picture Houses
 Drug Stores
 Luggage Shops
 Cabarets
 Hardware Stores
"The Board of Adjustment of the City of Miami Beach denied Petitioner a permit to construct its building in accordance with the plan submitted because, in its determination and judgment, the operation would not constitute a restaurant within the meaning of the zoning ordinance. Certain testimony was received before the Board from *596 good citizens interested in the matter, but completely outside of the scope of the inquiry. This is not a case in which someone seeks to secure a variance from zoning regulations or seeks to change the zoning where citizens affected may testify to the Board as to effects that such variances or changes in zoning would have on the value of surrounding properties. The sole question in issue is whether or not on the record before the Board, the operation of the Petitioner constitutes a restaurant within the meaning and legislative intent of the zoning ordinance.
"At the hearing before the Board of Adjustment, the Board properly sought the advice of the able and learned City Attorney, who referred them to his written opinion earlier given to the Building Inspector of the City, which opinion was made a part of the record. Said City Attorney's opinion, although different from the judgment and opinion of this Court, is a classic masterpiece in the English language, and points up very directly the problem to be resolved. Said opinion reads as follows:
"`I have your inquiry pertaining to the above, and have examined the building plans referred to.
"`The question, of course, is whether the proposed enterprise would constitute a "restaurant" within the meaning of the zoning ordinance.
"`The question is not without some difficulty and can be determined only by ascertaining the legislative intent as manifested by the zoning ordinance in its entirety.
"`The ordinance clearly recognizes the proposition that while every restaurant is an eating establishment, every eating establishment is not a restaurant.
"`It is, of course, unnecessary for a food establishment to be an Antoine's or a Maxim or to reflect the aura of candlelight and the restle of silken gowns to achieve the status of a restaurant.
"`However, the concept can scarcely be expanded to include an operation devoted to the mass production and consumption of the commodity known as the hamburger. The circumstance that the item is possessed of qualities of superb merit, and is purveyed in surroundings of lavish decor must be regarded as adventitious. Bereft of those qualities such an establishment would not be in harmony with virtually the highest type of business zoning in the City of Miami Beach, within which the desired location is situate.
"`I conclude, and it is my opinion, that the proposed operation would not constitute a "restaurant" as the term is used in the ordinance, and therefore the request for a building permit should be denied.'
"An examination of the record made before the Board of Adjustment, and certified to this Court, shows beyond any question that the manner and method in which Petitioner intended to conduct its Royal Castle restaurant business on the lot zoned `BAA' constituted a restaurant specifically and directly permitted by the zoning ordinance of the City of Miami Beach. The minutes of the Board reflect the following:
* * * * * *
"`In response to a suggestion by Mr. Wanick, the Board interrogated Mr. Stone as to the exact nature of the business and its operation. Mr. Stone replied that most of the food preparation was done on location, and the menu consisted of orange juice, tomato juice, prune juice, cereals, eggs, bacon, coffee, milk, root beer, hamburgers, chili, danish pastries, pies, donuts and soup. He added that the preparation and packaging of much of the food was done at a food commissary in Hialeah and is delivered in the early morning hours where the employees would prepare the food for actual consumption. *597 He went on to say that the building is air-conditioned, that all service is within the building and that the people must leave their cars and come into the building to be served by countermen or waiters. He added that it was a twenty-four hour operation, that there were ten seats available at the counter and more than adequate parking facilities.'
"In considering the zoning ordinance affecting petitioner's property, the Board of Adjustment is bound by the ordinary and usual meaning of the term `restaurant,' unless differently defined in its own provisions. In the case of Henke v. Zimmer, 158 Neb. 697, 64 N.W.2d 458, 459, the Supreme Court of Nebraska announced this rule in the following language:
* * * * * *
"`Where the provisions of a zoning ordinance, as to the uses of property which are permitted or which are prohibited in certain districts, are expressed in common words of everyday use, without enlargement, restriction, or definition, they are to be interpreted and enforced according to their generally accepted meaning. 62 C.J.S., Municipal Corporations Sec. 226(18), p. 486; 58 Am.Jur., Zoning, Sec. 11, p. 945.'
"F.S.A. Sec. 509.241(2) (a) defines a restaurant in this language:
"`(a) Every building, vehicle, or other structure of similar purpose, or any rooms or divisions in a building, vehicle or other structure of similar purpose, or any place whatsoever, that is maintained and operated as a place where food is regularly prepared, served or sold for immediate consumption on or in the vicinity of the premises is defined as, and shall be licensed as a public food service establishment * * *.'
"The Statute then goes on to state:
"`* * * Any reference to a restaurant in the laws of Florida shall be construed to mean a public food service establishment as herein defined unless a different intent is clearly evident.'
"In the Case of State v. Shoaf, [179 N.C. 744], 102 S.E. 705, [9 A.L.R. 426], the Supreme Court of North Carolina was called upon to define a restaurant to determine whether it was exempt from the Sunday closing law required by State Statute. The Court defined a restaurant in the following language:
"`* * * A restaurant is generally understood to be a place where refreshments, food, and drink are served. Whether they are served to guests seated at a table or on stools at a counter does not affect the definition; that being merely a detail in the operation of the restaurant. The evidence shows that the defendant had no tables in his place, but had a counter with stools arranged along in front of it, and to the guests seated on these stools he sold lunches, wieners, and egg sandwiches. * * *'
"In the case of Food Corporation v. Zoning Board of Adjustment of the City of Philadelphia, 384 Pa. 288, 121 A.2d 94, the Supreme Court of Pennsylvania held that the applicant was clearly entitled to a permit for the erection and use of a building as and for a restaurant, defining a restaurant in the following language:
"`* * * A restaurant is defined in Webster's International Dictionary as "An establishment where refreshments or meals may be procured by the public; a public eating house," and while this no doubt assumes that the refreshments are to be eaten on the premises, that qualification is here complied with since the food will be consumed there even though it be in automobiles stationed thereon. The applicant was clearly entitled to a permit for the *598 erection and use of a building as and for a "restaurant, cafe, or catering."'
"Considering definitions from Webster's Dictionary for the meaning of terms employed in a zoning ordinance, where the term is not defined by the ordinance itself, is recognized by our Florida Supreme Court. See Godson v. Town of Surfside, [150 Fla. 614], 8 So.2d 497.
"It is obvious that words of ordinary meaning and everyday usage cannot be given one interpretation as applied to one individual or group, and another interpretation as to a different individual or different group. As to the City and our Courts being bound by such ordinary meaning, see also Shapiro v. Zoning Board of Adjustment, [377 Pa. 621], 105 A.2d 299, and D.B.S. Building Association v. City of Erie, [177 Pa.Super. 487], 111 A.2d 367.
"The burden of showing that the Board of Adjustment committed error, both harmful and hurtful, to the Petitioner in not proceeding in accordance with the essential requirements of law is upon the Petitioner who seeks this review. The Courts cannot review the judgment, so to speak, of the men who constitute such a municipal board, and the action of the Court herein in ruling as it does is based on the Court's determination that reasonable men could not within the record determine and decide that the operation in question does not constitute a restaurant.

* * * * * *
"Therefore, in full view of the premises, it is,
"Ordered and Adjudged, as follows:

* * * * * *
"4) The petition for Certiorari is granted, and the Order appealed from is quashed.
"5) This cause is remanded to the Board of Adjustment of Respondent's city for further proceedings consistent with this opinion. * * *"
The above adequately states the matter under consideration and the disposition thereof, and we find no need to add thereto.
The briefs and argument before us having failed to convince us that any reversible error has been made to appear, the judgment appealed from should be, and hereby is
Affirmed.
HORTON, C.J., and LOPEZ, AQUILINO, Jr., Associate Judge, concur.