WISNER, ET AL. AND ROSENFELD, ET AL. t/a
Frederick Shopping Center Associates *v.*
BOARD OF ZONING APPEALS FOR FRED-
ERICK COUNTY, ET AL.

[No. 343, September Term, 1969.]

*Decided May 8, 1970.*

The cause was argued before HAMMOND, C. J., and
BARNES, MCWILLIAMS, FINAN and SINGLEY, JJ.

*David S. Weinberg,* with whom were *Weinberg & Wein-
berg* on the brief, for appellants.

*Richard E. Zimmerman,* with whom were *David E. Al-
dridge* on the brief for appellee McDonald's Corporation;
and *Frank Stillrich* on the brief for appellee Board of
Zoning Appeals for Frederick City, for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

In the context of the fast food industry most grown-ups and nearly all children, large and small, know about McDonalds. The question here is whether the McDonalds facility proposed for Frederick is a "cafe" or a "restaurant," as those terms are used in the Zoning Ordinance of the City of Frederick. The appellants say it is a "restaurant;" the appellees hold out for "cafe;" we cannot see that it matters much either way. The trial judge, Clapp, J., was of the opinion that the pertinent sections of the Zoning Ordinance "are not models of clarity." We are of a mind to agree with him.

Zimmerman, one of the appellees, is the owner of a corner lot in downtown Frederick, the zoning classification of which is B-O-Limited Business District. As stated by Judge Clapp:

> "In a B-O-Limited Business District, in addition to R-4-Multi Family District uses, the principal permitted uses under Section 11.102 of the Ordinance are medical offices, artists' studios and galleries, shops for the sale of gifts, antiques, articles, flowers, stationery, clothing, jewelry, candy and similar specialties for personal use and pharmacies primarily for prescriptions and pharmaceutical items."
>
> * * *
>
> "Section 11.30 permits certain conditional uses upon authorization by the Zoning Board of Appeals and under this heading Section 11.304 designates 'hotels, inns, *cafes*, soda fountains, tea-rooms, and taverns, not including dancing or entertainment' as some of such conditional uses." (*Emphasis added.*)

In February 1969 Zimmerman, as owner and as agent for McDonalds, applied to the Zoning Board of Appeals for a permit "to construct a cafe" on his land and for the conditional use of it as a "cafe." As Judge Clapp ob-

served, § 11.304 of the ordinance lists "cafe" as one of the conditional uses but it should be observed also that the term "restaurant" is omitted. Zimmerman's application, in the words of Judge Clapp, "was vigorously resisted before the Board of Appeals * * * [; its] decision * * * [was] reached after four lengthy hearings" and, we might add, some 400 pages of testimony.

Appellants argue that, absent from the ordinance a definition of either *cafe* or *restaurant,* the intention of the Mayor and Board of Aldermen (the legislative body) in adopting § 11.304 [1] must be determined by an examination of the three succeeding categories; i.e., B-1-Shopping Center District, §§ 12.00 to 12.60, B-2-Central Business District, §§ 13.00 to 13.50, and B-3-General Business District, §§ 14.00 to 14.60. They point out that § 12.302c [2] allows as a "permitted use" both *restaurants* and *cafes.* In the B-2-Central Business District § 13.101 [3] any use permitted in the B-0 and B-1 districts is a principal permitted use. They point out also that in the B-3-General Business District § 14.1111 [4] permits as a principal permitted use "drive-in eating and drinking places." Thus they conclude that it was the intention of the Mayor and Board of Aldermen to distinguish between *drive-in eating places, restaurants* and *cafes* and that the question thus becomes whether McDonalds is a cafe, consistent with § 11.304 or a restaurant, consistent with § 12.302c. Appellants insist that McDonalds is in fact a restaurant, whether it be called a "cafe, inn, tavern or what have you," because there will be about 40 employees, because the facility will be visited by 800 to 900 cars per day,

---

1. "Hotels, inns, cafes, soda fountains, tea rooms, and taverns, not including dancing or entertainment."

2. "Restaurants, cafes, or soda fountains, not including dancing or entertainment."

3. "Any Principal or Conditional Use or structure permitted in the B-0 and B-1 Districts (without the same conditions), except an automobile service station, and except as otherwise modified by this Section."

4. "Drive-in eating and drinking places, summer gardens, and road houses, including dancing and entertainment—provided the principal building shall comply with the specified distance requirements."

and because 2000 customers, more or less, will be served generating gross receipts of about $350,000 per year. Their principal witness, Julian Tarrant, a professional planning consultant, was "pretty much * * * responsible for the drafting" of the ordinance. He said we (himself and the Mayor and Board of Aldermen) "were intending to permit in the B-0 [District] only those kinds of limited professional office and business uses as would be quiet and modest and unobtrusive in residential surroundings." Asked if McDonalds was consistent with such a use he said, "No, it certainly is not." Yet he testified as follows:

> "A. It [a cafe] is a more limited type. I would say this—that a restaurant is a rather general term that may be applied to a whole variety of eating places."
>
> * * *
>
> "A. * * * A cafe, on the other hand, because of its name—the word itself is a French term derived from the word 'coffee,' and in fact in French it does mean 'coffee,' and therefore a coffee house, one that features coffee and similar beverages as distinguished from alcoholic beverages, and with that, of course, *light meals* or refreshments, pastries, delicacies, *light lunches* and maybe more substantial—there's no particular limit; * * *.
>
> "A restaurant, on the other hand, is generally conceived of as being *an all-purpose kind of an eating establishment,* inside—you have very few outside restaurants any more—with principally tables and chairs and waiters or waitress service, and serving a full scale of meals — entire meals, full meals, as a rule; * * *." (Emphasis added.)

It appears to be conceded that the "main items" on McDonalds' menu "are hamburgers and french fries." The addition of fried chicken was said to be still under

consideration. Applying Mr. Tarrant's concept of "cafe" and "restaurant" one could easily reach the conclusion that McDonalds will be more nearly a "cafe" than a "restaurant."

Appellants contend also that "regardless of what McDonalds chooses to call itself, it is not a limited business." They cite § 11.305 which authorizes other conditional uses "deemed by the Board to be of a similar character to those permitted, and not of a general commercial or industrial nature." But there is testimony sufficient to support a contrary conclusion. Mr. Tarrant thought a cafe was "a more *limited* type" of restaurant. (Emphasis added.) Mr. Brunk, a member of the Planning and Zoning Commission, was asked if he considered McDonalds "to be a limited type business." He replied, "I certainly do." The parties stipulated that the word "cafe" has been defined as follows:

> Cafe—a coffee house, restaurant with music and entertainments, often in open air. *Concise Oxford Dictionary*
>
> Cafe—a coffee-house, refreshment room or restaurant; sometimes (U.S.) a bar room. *Funk & Wagnall's New Standard Dictionary*
>
> Cafe—a coffee-house; restaurant. *Funk & Wagnall's Standard*
>
> Cafe—a coffee-house, a restaurant; strictly a French term but recently introduced in this country for the name of a class of restaurant. *Oxford English Dictionary, 1933 Unabridged Edition*
>
> 1. A restaurant, usually small and unpretentious. 2. A bar room, cabaret, or night club. *Random House*
>
> Cafe 1. A coffee house or restaurant. *Webster's New World Dictionary*
>
> The term "restaurant" and "cafe" are generally considered as being synonymous—reference to State v. Shoaf, 179 N.C. 744, 102 S. E. 705, 9 A.L.R. 426. *40 Am.Jur.2d*

On page 878 the word "cafe." It has been said that the word was originally a French word meaning "a coffee house," but that as the word is now ordinarily and properly used in English it means a restaurant or house for refreshments, and that, in common parlance, the terms "cafe" and "restaurant" are substantially synonymous. *Corpus Juris Secundum*
The word "cafe" as ordinarily and properly used means a restaurant or house for refreshments. *6 Words and Phrases*

It should be understood that the Board, in granting the conditional use, imposed 18 conditions and restrictions which, if literally observed, may well bring the facility within the business use contemplated by Mr. Tarrant, i.e., "quiet, modest and unobtrusive." We have set forth below some of those restrictions:

"D. There shall be no signs allowed except: the word 'McDonalds' which shall be limited to forty-five (45) square feet, placed on the front of the building facing West 7th Street and not to be illuminated; * * *.

"E. That no attendant employees of the cafe may serve customers in or on vehicles in any outside areas.

"F. That no exterior ordering device will be installed whereby a customer may place an order from a vehicle.

"G. That no dancing or entertainment will be conducted in the building * * *.

"H. That no amplifying devices shall be used * * *.

"I. That one employee * * * shall be primarily assigned * * * to the policing of the interior and parking lot and off-premises litter which might be created.

"J. That no exterior trash receptacles be located off premises and particularly on the sidewalks, nor in the prescribed front yard area."

\* \* \*

"M. No 'arches' shall be used on the building or the premises \* \* \*."

\* \* \*

"O. Any lighting used to illuminate the building or the parking area shall be so arranged as to direct the light away from adjoining premises in the 'R' District and from the public streets.

"P. Business hours shall be limited to 9:00 A.M. to 11:00 P.M., Monday thru Friday; 9:00 A.M. to 12:00 P.M., on Saturday; and 11:00 A.M. to 11:00 P.M. on Sunday. All exterior lights shall be extinguished at the conclusion of business hours."

We quote again from Judge Clapp's opinion:

"Cafes, admittedly, are a conditional use in such district [B-O] and under Section 21.34 of the Ordinance authorizing the Board of Appeals to hear and decide applications for conditional uses, the Board must give 'due regard to the nature and condition of all adjacent uses and structures' and may impose such requirements and conditions with respect to location, construction, maintenance and operation as the Board may deem necessary for the protection of adjacent properties and the public interest.

"Moreover, under Section 21.342 the Board may require the installation, operation and maintenance in or in connection with the proposed use of such devices and methods of operation as may in its opinion be reasonably required to prevent or reduce hazardous or congested traffic conditions, odor, dust, smoke, gas,

noise or similar nuisances and it may impose such other conditions and requirements as may be necessary in its opinion to protect adjacent properties and neighborhoods and prevent conditions which may become obnoxious or offensive. The Section further contains a provision for compelling compliance with any conditions imposed.

"Further, Section 21.40 requires the Board of Appeals in deciding these conditional uses applications to study the property involved and the neighborhood and to give specific consideration to some 14 matters relating to the effect of the grant of such a conditional use on public health, safety, security, morals, or general welfare including the contribution, if any, such proposed use, building or addition would make toward the deterioration of areas and neighborhoods.

"This review of conditional uses in a B-O zone and the safeguards placed around their issuance makes it apparent that the Board of Appeals, by conditions, may keep the building and the operation of the use, compatible to surrounding areas. The Board of Appeals has undertaken to do this by the conditions imposed and the fact that the operation will be McDonalds or any other large operator does not mean that such large operation will be conducted on the land in question. The Board is given a broad discretion within the guidelines outlined above and has exercised this discretion by the conditions imposed. In an appeal to the court from a decision of the Board of Appeals in matters of this type, *the question, simply put, is whether there was sufficient evidence before the Board to make the issue fairly debatable.* In this instance *much evidence was taken* and the Board decided *to follow one line of evidence rather*

*than the other.* This it had authority to do and the court is without authority, since there was ample supporting evidence, to overrule the Board. Accordingly, * * * the action of the Board must be affirmed." (Emphasis added.)

Since Judge Clapp seems to have it just about right nothing more need be said.

> *Order affirmed.*
> *Costs to be paid by the appellants.*