HERSEY, Judge.
Eastern Insurance Company appeals from a final judgment determining that appellee is entitled to coverage for loss of an insured boat.
The Rock Beauty, a fifty-seven foot Chris-Craft vessel was jointly owned by ap-pellee, Austin, and a partner. The boat was used for charter. In about May of 1976 appellee bought out his partner and retired the vessel from commercial use. Accordingly, the status of a loan against it changed from “commercial loan” to “installment loan” and the insurance policy in issue here was acquired in response to a requirement of the bank which held the loan. Appellant, through an agent, provided a private pleasure yacht policy which contained the following “private pleasure and transfer of interest” clause:
The coverage under this policy shall terminate upon the sale, assignment, transfer, or pledge of the interest of the insured in the property insured hereby or upon the use of the yacht for other than private pleasure purposes or upon the chartering or rental of the yacht, unless a previous written consent of the company has been obtained.
The boat was in fact used for pleasure, but the evidence showed that on three or four occasions appellee would sell surplus fish caught by him and his guests to either commercial establishments or individuals on the dock and the proceeds would be used to help defray expenses. On one or more occasions the arrangement between appellee and his fishing guests required that a certain percentage of the entire catch be sold for this purpose. On no occasion were proceeds of a sale sufficient to defray total expenses.
In February of 1978 appellee and some friends planned a fishing trip to the Bahamas. Appellee encountered a delay and the others left on the Rock Beauty. Appellee was to fly over and join them in the Bahamas. The vessel struck an object in stormy weather and sank fifteen miles from the Bahama Islands in water of a depth precluding recovery.
Appellant insurance company denied coverage and this litigation ensued.
After a non-jury trial the court found that the incidental sale of surplus fish was not a violation of the pleasure craft warranty and that, even if it were, the result would be only a temporary suspension of coverage during a commercial operation rather than a termination of the policy.
Appellant’s position, on appeal, is that “using the vessel to catch fish for profit” constituted a violation of the private pleasure warranty provision of the policy of marine insurance and therefore voided coverage.
Relying on Section 627.409(2), Florida Statutes (1979), appellant points out that a violation voids coverage rather than operating to suspend coverage where the “violation increased the hazard . ... ” The hazard was increased, insists appellant, by virtue of the fact that its reinsurance treaties prohibited any commercial use. It is unclear whether appellant considers this a separate and distinct type of “increased hazard” or whether it only becomes so in conjunction with the fact that a vessel used commercially is ordinarily subject to great *825 er hazards than one utilized solely for pleasure. We think that the reinsurance restriction, in and of itself may increase the exposure of appellant but not the hazard, which term we take to refer to danger to the insured vessel itself. We accept, arguendo, that the real hazard is substantially greater for a commercial use than if use of the craft is devoted exclusively to pleasure. We can not and do not accept the premise that the occasional sale of fish caught on a pleasure fishing trip has any relevancy whatsoever to hazard in this sense.
Another argument relied on by appellant is that use of the yacht in this manner called into play the exclusionary provision because, under Florida law, Section 371.021 Florida Statutes (1979), it became a commercial vessel. That section reads:
(10) “Commercial vessel” means:
(a) Any resident vessel engaged in the taking of saltwater fish or saltwater products, freshwater fish or freshwater products, for sale either to the consumer, retail dealer or wholesale dealer;
(b) Any vessel engaged in any activity wherein a fee is paid by the user, either directly or indirectly to the owner, operator, or custodian of the vessel.
From this appellant postulates that the Rock Beauty was a commercial vessel and therefore the private pleasure warranty was violated.
However, in its ordinary connotation, commercial or charter use involves a commercial venture with investment in gear and equipment, intent on making some form of profit. One who would ascribe an exotic meaning to a term in a contract which otherwise has perfectly ordinary connotations must take pains to define the term either expressly or by express reference. The insurance policy at issue here contains no reference to the above quoted statutory provision nor does it define the terms “charter” or “private pleasure purposes.”
Since the terms “charter” and “private pleasure purposes” are subject to more than one interpretation, that interpretation which sustains the claim for benefits controls. Aetna Insurance Co. v. Webb, 251 So.2d 321 (Fla. 1st DCA 1971). Ambiguity and uncertainty should be construed in favor of the insured. Stuyvesant Insurance Co. v. Butler, 314 So.2d 567 (Fla.1975).
The Rock Beauty was used basically for pleasure. At no time did an incidental sale of fish defray the entire expense of a trip. Thus, there was never a profit. While that does not absolutely determine the issue, for not every business makes a profit, it can be fairly said that most businesses intend either to make a profit or to reap some tax benefit which is advantageous even if, strictly speaking, it is not a “profit.”
The evidence supports the holding of the trial judge that incidental sales of fish on a few occasions for the purpose of defraying some of the expenses was not a violation of the private pleasure use warranty. Having concluded that the final judgment should be affirmed on that basis, we do not reach the issue of the effect of a temporary or occasional violation of such a warranty.
ANSTEAD and GLICKSTEIN, JJ., concur.