501 So.2d 101 (1987)
SPECIALTY RESTAURANTS CORP., and Biscayne Bay Restaurants Corp., Appellants,
v.
CITY of MIAMI, Horatio Enterprises, Inc., Marina Biscayne, Inc., Martin Rabin, Marilyn Rabin and Stanley Rabin, Appellees.
HORATIO ENTERPRISES, INC., Appellant,
v.
Specialty Restaurants Corp., Biscayne Bay Restaurants Corp., and City of Miami, Appellees.
Nos. 86-252, 86-325.
District Court of Appeal of Florida, Third District.
January 20, 1987.
Robinson & Greenberg and Barry N. Greenberg and Carol L. Cox, Coral Gables, for appellants/appellees Specialty Restaurants Corp. and Biscayne Bay Restaurants Corp.
Lucia A. Dougherty, City Atty., and John J. Copelan, Jr., and Rafael E. Suarez-Reivas, Asst. City Attys., Miami, for appellee City of Miami.
John G. Fletcher, South Miami, for appellees Marina Biscayne and Rabins.
Lapidus & Frankel and Richard L. Lapidus, Miami, for appellee/appellant Horatio Enterprises.
Before BARKDULL, HENDRY and HUBBART, JJ.
HENDRY, Judge.
Plaintiffs Specialty Restaurants Corp. and Biscayne Bay Restaurants Corp. (Specialty) are lessees under a 1970 lease with the City of Miami, whereby Specialty owns and operates a restaurant on Key Biscayne known as the Rusty Pelican Restaurant.[1] The city leased the adjacent property to Marina Biscayne, Inc. (Marina) in July, 1977. The 1977 lease (master lease) provides for the development of a marina and marina support facilities, including the right to sell and consume "beverages, food and beer" on the premises.[2]
*102 This dispute revolves around Marina's subsequent sublease, in late 1982, of a portion of the same premises to Horatio Enterprises (Horatio's). The sublease, to which the city executed a written consent, specifically provided for use of the premises as a restaurant and lounge.
Construction of Horatio's restaurant and lounge began in early 1983. In November, 1984, when the structure was nearly completed, Specialty filed the instant lawsuit against the City of Miami, Horatio's, Marina, and Martin, Marilyn and Stanley Rabin.[3]
In Count I of the amended complaint, Specialty alleged that under the sublease, the city modified the master lease to permit the sale of alcohol other than beer on the premises. It sought a declaratory judgment that: 1. the master lease provision allowing the sale and consumption of "beverages, food and beer" was not intended to include alcohol other than beer, and 2. the city's consent to the sublease was invalid because any modifications of existing leases must be made either through the city's procurement methods (competitive bidding) or by approval of a majority of the city's voters. In count II, Specialty sought to permanently enjoin the sale and consumption of alcohol other than beer on the subleased premises, or, alternatively, to require the city to comply with its own bidding requirements or obtain approval of a majority of its voters.
Horatio's counterclaimed against Specialty and cross-claimed against the city, alleging that because the Rusty Pelican Restaurant was substantially destroyed by fire, the 1970 lease between Specialty and the city terminated pursuant to a provision therein contemplating the premises being rendered "untenantable." Accordingly, Horatio's sought an injunction requiring the city to advertise for bids for the allegedly terminated leasehold for the former Rusty Pelican Restaurant site.
During the course of the proceedings, all parties moved for summary final judgment. The trial court denied Specialty's motion, and entered summary final judgment for all defendants, as follows:
First it is determined and declared that the Plaintiffs have the requisite standing to bring this action. However, their substantial delay in doing so has unjustly prejudiced the Defendants and thus this action is barred by laches.
Further, even if the Plaintiffs were not so barred they would not be able to prevail. The lease agreement entered into between Marina Biscayne, Inc., and the City of Miami contains no glossary of terms, thus the plain and ordinary meaning of the words used therein are to be applied. State Dept. of Business Regulation v. Salvation, Ltd., 452 So.2d 65 (Fla. 1st DCA 1984); Eastern Insurance Company v. Austin, 396 So.2d 823 (Fla. 4th DCA 1981). One looks to the dictionary for the plain and ordinary meaning of words. City of Miami Beach v. Royal Castle System, Inc., 126 So.2d 595 (Fla. 3rd DCA 1961). Every dictionary definition reviewed by the Court makes it clear that the word "beverages" includes alcoholic beverages. As a consequence the lease agreement, which permits the sale and consumption of "beverages", permits the sale and consumption of alcoholic beverages. As a further consequence the sublease agreement includes the sale of alcoholic beverages. Plaintiffs' contentions to the contrary are rejected.
Although the subject lease agreement is not ambiguous and it is thus not necessary to look to parol evidence to construe it, the Court has been presented with uncontroverted evidence that the parties have, since the inception of the lease, construed it to include the sale and consumption of alcoholic beverages. Thus even if the word "beverages" had an ambiguous definition, i.e., sometimes including liquor, sometimes excluding liquor, *103 it is clear that this agreement was intended to include it.
Accordingly, Final Judgment is hereby entered for all the Defendants and, other than this declaration, the Plaintiffs' prayer is denied with prejudice. The Court reserves jurisdiction to tax costs against the Plaintiffs.
The court further entered an order dismissing Horatio's counterclaim and cross-claim for "failure to state a cause of action and lack of standing of [Horatio's]," from which order Horatio's appeals in Case No. 86-325. Upon denial of its motion for rehearing, Specialty filed its appeal from the adverse summary final judgment (Case No. 86-252). This court granted Horatio's motion to consolidate the two appeals.
In seeking reversal of the final judgment, Specialty sets forth the following contentions: (a) The master lease permitting the "sale and consumption of beverages, food and beer" did not allow for the sale of all alcoholic beverages, in addition to beer, and the city's consent to such sale constitutes a modification of the lease; (b) the modification is void due to the city's failure to comply with municipal law which requires competitive bidding requirements or voter approval; and (c) defendants failed to prove that Specialty was guilty of laches. Additionally, while the city has taken the position, both below and on appeal, that Specialty lacks the requisite standing to maintain this action, Specialty contends that the trial court ruled correctly with respect to the standing issue.
We affirm the judgment and rulings of the trial court in Case No. 86-252 upon a holding that the trial court did not err in finding that the word "beverages," as used in the master lease, is capable of only one meaning  that which includes alcoholic beverages.
Summary judgment is properly granted where there is no issue as to any material fact and the movant is entitled to judgment as a matter of law. Fla.R.Civ.P. 1.510. It is only where the language of an agreement is ambiguous that an issue of fact is presented (as to the meaning of the language or the intent of the parties). Metro. Dade County v. Resources Recovery (Dade County) Constr. Corp., 462 So.2d 570, 571 (Fla. 3d DCA 1985).
A contract is ambiguous when its language is reasonably susceptible to more than one interpretation, or is subject to conflicting inferences. See Hoffman v. Terry, 397 So.2d 1184, 1184 (Fla. 3d DCA 1981); Ellenwood v. S. United Life Ins. Co., 373 So.2d 392, 394 (Fla. 1st DCA 1979); Reliance Ins. Co. v. Brickenkamp, 147 So.2d 200, 202 (Fla. 2d DCA 1962). Whether a contract is ambiguous is a question of law, to be determined by the trial court. See Friedman v. Virginia Metal Products Corp., 56 So.2d 515 (Fla. 1952); Upchurch v. Mizell, 50 Fla. 456, 40 So. 29 (1905); Hoffman v. Terry, 397 So.2d 1184; Ellenwood v. S. United Life Ins. Co., 373 So.2d at 394; Reliance Ins. Co. v. Brickenkamp, 147 So.2d at 202. Here, the court found, and we agree, that the master lease is not ambiguous in its use of the word "beverages." Therefore, the plain meaning of the word applies exclusive of parol evidence. See Atlas Sewing Center, Inc. v. Belk's Dep't Store, 162 So.2d 274, 275 (Fla.2d DCA 1964) (a court may not hear oral testimony in interpreting a contract which is clear and unambiguous); Cf. Rock-Weld Corp. v. Rock-Weld Equip. Corp., 184 So.2d 186, 187 (Fla. 3d DCA 1966) (parol evidence permissible where contract is ambiguous). We further agree with the trial court that the ordinary meaning of the word "beverages" includes alcoholic beverages. See e.g., The American Heritage Dictionary 128 (New College ed. 1979) ("any of various liquid refreshments, usually excluding water"); Black's Law Dictionary 204 (4th ed. 1957) ("a liquor or liquid for drinking"); The Compact Edition of the Oxford English Dictionary 837 (1985) ("Drink, liquor for drinking; esp. a liquor which constitutes a common article of consumption") (e.s.); The Random House Dictionary of the English Language 143 (Unabridged ed. 1966) ("a drink of any kind other than water....") Accordingly, the clear language of the master lease demonstrates *104 that defendants are entitled to judgment as a matter of law.
We have carefully considered the remaining points raised by all parties in Case No. 86-252, and find them to be without merit.
Additionally, we have carefully reviewed the record, briefs and arguments of counsel in Case No. 86-325, and conclude that no reversible error has been demonstrated therein.
For the foregoing reasons and based upon the authorities cited, the judgment and rulings under review are affirmed.
Affirmed.
NOTES
[1] During the pendency of this litigation in the trial court, the Rusty Pelican Restaurant was substantially damages by fire. Specialty represents, in its initial appellant's brief, that its restaurant is currently being rebuilt.
[2] The master lease was awarded following public competitive bidding for the property, pursuant to municipal law.
[3] Marina had assigned its rights under the sublease to the Rabins by the time this suit was filed.