JORGENSON, Judge,
dissenting.
I respectfully dissent. Because the term “purchaser” is not defined in any of the documents in this case, we should ascribe to that term its ordinary meaning. See Granados Quinones v. Swiss Bank Corp., 509 So.2d 273, 275 (Fla.1987) (“Words contained in the agreement should be given ‘a natural meaning or the meaning most commonly understood in relation to the subject matter and circumstances’.”) (citation omitted). “One looks to the dictionary for the plain and ordinary meaning of words.” Specialty Restaurants Corp. v. City of Miami, 501 So.2d 101 (Fla. 3d DCA 1987). Accord Mandelstam v. City Comm’n of South Miami, 539 So.2d 1139 (Fla. 3d DCA 1988) (term “school,” which was not defined in zoning regulations, was to be given its ordinary dictionary meaning), rev. denied, 545 So.2d 1366 (Fla.1989). A purchaser is “one who obtains or acquires property by paying an equivalent in money or other exchange of value.” Florida Dept. of Revenue v. De Maria, 338 So.2d 838, 840 (Fla.1976) (quoting Webster’s Twentieth Century Dictionary 1463 (2d ed. 1971)); see also The Oxford English Dictionary 1614 (1933) (“one who purchases for money; a buyer”). Under either of these definitions, Norbro was clearly a purchaser. Norbro bought the sixty units in Horizons North I; as the majority here recognizes, that sale was evidenced by a contract of sale and sixty individual warranty deeds which conveyed title to the individual units. In fact, in the Contract of Sale and Purchase, Norbro is unequivocally designated a purchaser. Just as a “school” is a “school,” Mandelstam, 539 So.2d at 1140, a “purchaser” is a “purchaser” notwithstanding Norbro’s artful attempt to avoid its obligation to contribute to the Association’s working capital account by claiming that it is nothing but a successor developer. Neither the condominium documents nor the Condominium Act, Chapter 718, Florida Statutes (1987), precludes a successor developer from also being a purchaser. Norbro can take no comfort in the fact that the association failed to press its rights with respect to the leasing restrictions; such a failure may have been part of a legitimate strategy decision. Moreover, Norbro’s acquisition of the units in a bulk sale outside the prospectus by way of a “24-page tome,” as characterized by the majority opinion, cannot operate to deprive the association of its rights under the condominium documents.[1] Norbro chose to purchase without the protection of Chapter 718 and without the benefit of the prospectus; that choice cannot defeat the association’s right to working capital contributions. Chapter 718 and reported cases make no distinction between “purchasers” and “ultimate purchasers.” To hold otherwise would permit developers and their successors to evade their responsibilities to condominium associations.
Because Lennar sold, and Norbro purchased, the condominium units in question, *530 Norbro, as purchaser, should be liable for the capital contribution.
I would reverse.

. The sixty warranty deeds in the record which conveyed the units from Lennar to Norbro state that the Grantor "... hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto Grantee” each unit. Each deed further states that "[t]his conveyance is exempt from the Dade County surtax inasmuch as the interest conveyed hereby consists solely of a single-family residence." (Emphasis added.) The "bulk sale” thus consisted of multiple individual purchases of the units; each purchase should trigger Norbro’s obligation to contribute to the Association’s working capital account.