ROTHENBERG, J.
 

 The defendant, Pan American West, Ltd. (“the owner”), appeals from a final summary judgment in favor of the plaintiff, Cardinal Commercial Development, Inc. (“the buyer”). The buyer cross-appeals from a final summary judgment in favor of the owner and Pan American West Property Owners’ Association (“the POA”). We affirm the trial court’s decision as to both the owner’s appeal and the buyer’s cross-appeal.
 

 The Owner’s Appeal
 

 This appeal centers on a dispute over a $1,078,110 deposit (“the deposit”). The buyer entered into a pre-development agreement to purchase a 16.5 acre lot (“the Property”) located within the owner’s industrial park (“the Park”). The deposit— representing ten percent of the purchase price — was placed in escrow upon execution of the agreement. The parties then executed an addendum to the agreement (“the first addendum”) which provides in relevant part as follows:
 

 In the event that the Property does not contain at least 17,647.05 buildable square feet[
 
 1
 
 ] (as determined by Miami-Dade County standards) per acre of Property, the [buyer] shall have the right to terminate the Contract by providing written notice to [the owner] at least fifteen (15) days prior to Closing, whereupon all parties hereto shall be relieved from any further obligation under the contract and the deposit shall be refunded to the [buyer].
 

 The parties do not dispute that 17,647.05 buildable square feet per acre were generally allocated to the entire Park. However, that general concurrency allocation was non-exclusive and subject to reduction if other developments in the Park consumed a greater per-acre share on a “first-come, first-served” basis. The closing date was set for April 30, 2008. On April 10, having discovered that no specific minimum allocation of concurrency had been recorded for the Property in the County’s records, the buyer notified the owner in writing that it was terminating the contract. The owner refused to release the deposit.
 

 The buyer sued the owner for breach of the contract (“Count I”), arguing that in the first addendum, the buyer bargained for a specific allocation of concurrency. The trial court agreed and entered final summary judgment for the buyer on Count I. The owner’s appeal of that decision followed.
 

 The trial court found that the first addendum was unambiguous and called for the Property, not the Park, to contain at least 17,647.05 buildable square feet per acre. Accordingly, the trial court determined that because the owner failed — as of April 10, 2008 — to specifically allocate the bargained-for level of concurrency to the Property, the buyer timely exercised its right to terminate the agreement and was entitled to a return of the deposit. The trial court also set forth an alternative basis for its decision, finding that even if the first addendum was ambiguous, the outside evidence supports the same conclusion. However, because we agree that the first addendum was unambiguous, we need not address the trial court’s alternative ruling.
 

 
 *71
 
 “A contract is ambiguous when its language is reasonably susceptible to more than one interpretation, or is subject to conflicting interests.”
 
 Specialty Rests. Corp. v. City of Miami,
 
 501 So.2d 101, 103 (Fla. 3d DCA 1987). Where a contractual provision is unambiguous, no issue of fact is presented as to the meaning of the language or the parties’ intent, and the moving party is entitled to judgment as a matter of law.
 
 Id.
 

 The trial court ruled that the first addendum “unambiguously calls for the Property specifically, not
 
 just the Park,
 
 ” to be exclusively allocated a certain level of concurrency. However, as of the termination date, that specific allocation had not been made or filed with the County in any manner. The trial court also concluded that the alternative interpretations set forth by the owner were “inconsistent, contradictory, and irreconcilable with the plain terms” of the first addendum. We agree.
 

 In executing the first addendum, the parties plainly bargained for an exclusive concurrency allocation specific to the Property, not the Park. However, the owner failed to make the necessary allocation by the date of the buyer’s termination of the agreement. Furthermore, because the owner failed to set forth a reasonable alternative interpretation of the language in the first addendum, the trial court properly ruled that the language of the first addendum was unambiguous, and that the buyer was entitled to judgment on Count I as a matter of law. We find no error in the trial court’s ruling that the owner’s affirmative defenses fail as a matter of law.
 

 Thus, as to the owner’s appeal, we affirm the trial court’s decision in all respects.
 
 [2]
 

 The Buyer’s Cross-Appeal
 

 The buyer’s complaint included six additional counts (for breach of an alleged Office Allocation Agreement, unjust enrichment, and negligent misrepresentation) against both the owner and the POA (“Counts II-VII”) based on the following events.
 

 In the middle of 2006, after the execution of the first addendum, the buyer contacted the owner to explore the possibility of developing office space on the Property. To do so would require a large additional allocation of buildable square feet. The owner and the buyer exchanged a number of e-mails attempting to figure out how to obtain the increase in buildable square feet. The parties estimated that required pump station upgrades would cost approximately $100,000, but the buyer never promised to pay a specific amount, and the owner did not promise to deliver a specific, certain amount of additional concurrency. The buyer sent a $5,000 check to the owner to pay for a preliminary engineer’s study seeking to determine how to obtain the increase. Eventually, the owner obtained a general concurrency allocation with no additional cost required for pump station or other upgrades. No concurrency allocation was made specific to the Property.
 

 Counts II and III allege that the above exchange of e-mails resulted in the formation of an enforceable Office Allocation Agreement,
 
 [3]
 
 which the owner and the POA breached by failing to obtain a specific allocation of additional concurrency for the Property. The unjust enrichment claims,
 
 *72
 
 Counts IV and V, seek to recoup from the owner and the POA any increase in the value of the Park due to the increase in buildable square feet attributable to the buyer’s efforts. And finally, the negligent misrepresentation claims, Counts VI and VII, seek damages for falsely stating in the proposed declaration accompanying the signing of the agreement that each purchased lot would receive a specific concurrency allocation. The owner moved for, and obtained, final summary judgment on Counts II-VII. The buyer’s cross-appeal followed.
 

 We agree with the trial court that the owner is entitled to judgment as a matter of law on Counts II-VII.
 

 As to Counts II and III, we conclude that there was never a meeting of the minds, and the parties did not form a separate Office Allocation Agreement. The buyer never agreed to pay a fixed amount. In exchange for this unknown amount, the owner never agreed to obtain a fixed additional amount of concurrency. Neither party was required to perform these indefinite obligations upon or by a fixed date. Thus, the undisputed facts reveal that there was no enforceable separate contract, and summary final judgment was properly entered on Counts II and III.
 
 See Bankers Trust Co. v. Basciano,
 
 960 So.2d 773, 777 (Fla. 5th DCA 2007) (holding that a contract cannot be created without “mutual assent to a certain and definite proposition”);
 
 Dows v. Nike, Inc.,
 
 846 So.2d 595, 602 (Fla. 4th DCA 2003) (“Where essential terms of an agreement remain open, and subject to future negotiation, there can be no enforceable contract.”).
 

 As to Counts IV and V, we hold that the trial court correctly entered summary final judgment because the record is utterly devoid of any evidence that any efforts expended or amounts paid by the buyer resulted in an increase in the value of the Park.
 
 See Moynet v. Courtois,
 
 8 So.3d 377, 379 (Fla. 3d DCA 2009) (noting that a cause of action for unjust enrichment requires that plaintiff has conferred a benefit upon defendant).
 

 Finally, as to Counts VI and VII— the negligent misrepresentation claims— we hold that the trial court correctly determined that the owner was entitled to judgment as a matter of law. The negligent misrepresentation upon which the buyer claims to have relied, states in relevant part as follows: “In connection with the approval of the plat, each Lot has been assigned a capacity reservation in the affected public services and facilities based on the anticipated square footage and type of development for each Lot.”
 

 The foregoing quotation was contained in the proposed, unrecorded declaration that was delivered to the buyer around the time of the execution of the agreement. By signing the agreement, the buyer expressly acknowledged that the owner’s delivery of the proposed declaration was made “without representation or warranty of any kind.” A proposed document is, by its very nature, unsettled and subject to future changes. And here, the proposed declaration was accompanied by an expressly acknowledged disclaimer of responsibility for any representations therein. Thus, we conclude that the buyer cannot establish that it justifiably relied on the contents of the proposed declaration.
 
 See Coral Gables Distribution, Inc. v. Milich,
 
 992 So.2d 302, 303 (Fla. 3d DCA 2008) (providing that a showing of justifiable reliance is necessary to prove negligent misrepresentation).
 

 In addition, Counts VI and VII are based on representations related to, and later made part of, the owner’s contractual obligations under the first addendum. Thus, the economic loss rule applies, and
 
 *73
 
 bars the buyer’s claims for negligent misrepresentation.
 
 See Concept Stores Miami, Inc. v. Bakery
 
 Assocs.,
 
 Ltd.,
 
 990 So.2d 1118, 1118-19 (Fla. 3d DCA 2008);
 
 Taylor v. Maness,
 
 941 So.2d 559, 564 (Fla. 3d DCA 2006);
 
 Straub Capital Corp. v. L. Frank Chopin, P.A.,
 
 724 So.2d 577, 579 (Fla. 4th DCA 1998). The trial court properly ruled that the owner was entitled to judgment as a matter of law on Counts VI and VII.
 

 Conclusion
 

 The trial court correctly determined that the language of the first addendum was unambiguous, and the buyer was entitled to judgment on Count I as a matter of law. Similarly, because the undisputed facts reveal that there was no enforceable separate Office Allocation Agreement, no unjust enrichment, and no grounds for an independent tort action based on negligent misrepresentation, the trial court properly entered summary final judgment for the owner on Counts II-VTI. The judgment of the trial court is affirmed.
 

 Affirmed.
 

 [1]
 

 . "Buildable square feet,” "capacity reservation,” and "concurrency,” are interchangeable terms used to describe the infrastructure requirements that must be in existence before a subdivision development can be approved.
 

 [2]
 

 . We decline to specifically address the additional arguments made by the owner, as we find they are without merit.
 

 [3]
 

 . In February 2008, after the alleged formation of the Office Allocation Agreement, the parties executed a second addendum which made no mention of the alleged Office Allocation Agreement.