WELLS, J.
Miami-Dade County appeals from a trial court order granting relief from judgment to a tax deed purchaser. We reverse.
In February of 2007, Second Sunrise Investment Corp. secured a deed to a parcel of property at a tax deed sale. That deed, which in accordance with Florida law provided “THIS DEED IS SUBJECT TO GOVERNMENTAL TAXES AND LIENS,” was encumbered by $59,294.38 in County code enforcement liens.
On March 11, 2007, Team Metro, the self-funding County department charged with enforcing code enforcement liens, sent a letter to Second Sunrise advising it of the amount due in order to satisfy the liens. Second Sunrise responded, requesting a reduction in the amount demanded. Two days later, on March 13, 2007, Second Sunrise filed a quiet title action against the property’s prior owner, joining the County because of the “pending code enforcement violation and orders and liens.” Although the County’s liens totaled $59,294.38, and the surplus in the Court Registry amounted to $22,383.23, the complaint alleged that “there are sufficient surplus funds from the tax deed sale to satisfy [the county’s code enforcement] liens.”[1] The County responded by asserting section 197.552 and the primacy of its code liens. On August 30, 2007, Second Sunrise moved for summary judgment, again alleging that the County had been named because of the “numerous code enforcement liens it ha[d] on the subject property,” and again asserting that as to any liens held by the County “[s]aid liens do not survive ... because there are sufficient surplus funds.”
*84 On October 30, 2007, a summary judgment quieting title in Second Sunrise was entered. That judgment not only directed the Clerk of the Court to disburse surplus funds held in the registry to the County to satisfy its liens, it also confirmed that to the extent that such funds were insufficient to satisfy those liens that the liens remained in effect:
The Clerk of Court, Miami-Dade County, pursuant to Florida Statutes Section 197.582(2) shall disburse the surplus funds from the tax deed sale File number 06-525 to Miami-Dade County to the extent necessary to satisfy all liens held by Miami-Dade County.... Pursuant to Florida Statutes Section 197.552 any liens in favor of Miami-Dade County shall survive the issuance of the tax deed and are not effected [sic] by this judgment to the extent not satisfied by the surplus funds from the tax deed sale.
(Emphasis added).
Thereafter, on June 18, 2009, some twenty months later, Second Sunrise filed the instant “Motion for Return of Tax Deed Surplus and for Other Relief.” This motion made no reference to Florida Rule of Civil Procedure 1.540 or the basis on which it was asserting jurisdiction. The substance of the motion was Second Sunrise’s claim that some seven months prior to the October 30, 2007 final judgment quieting title, it had reached a settlement agreement with Team Metro (Miami-Dade County) whereby Team Metro had agreed to take $14,276.59 from the court registry surplus in full satisfaction of the County’s outstanding liens, and contrary to that agreement, the County had taken $22,383.23 from the surplus, leaving certain County Solid Waste liens unpaid.
At the hearing on this motion which followed, Second Sunrise presented a Team Metro internal form titled “Settlement Request Form to Supervisor.” This document, initialed by Team Metro supervisor Carmen Flores, stated the amounts Team Metro would be willing to accept as settlement for its liens. Ali Yasin, Second Sunrise’s principal, claimed that he obtained this document on April 5, 2007 at Team Metro’s offices, and although he could not remember with whom he had met to discuss this matter, it was settled when he noted “Mr. Maroof, Collect from Surplus” on the top of this document.[2] However, neither Mr. Maroof nor anyone else from Team Metro initialed Mr. Yasin’s change to the Team Metro document.
The County did not dispute below that Ms. Flores met with Mr. Yasin on April 5, 2007, or that she proposed compromising the County’s lien claims for $14,276.59.[3] The County claimed, however, that this sum was to be paid by Second Sunrise, not from the surplus being held in the court registry, and that Mr. Yasin rejected Team Metro’s compromise offer by noting at the top of the document that the County was to satisfy its liens from the registry surplus rather than writing a check.
On November 5, 2009, Second Sunrise’s motion was granted and the October 30, 2007 final judgment was “amended” to require the County to return to the court registry a portion of the funds paid pursuant to that judgment:
Plaintiffs motion for Return of Tax Deed Surplus is Granted. The Final Summary Judgment entered October 30, *85 2007 is amended to require Miami-Dade County to, within 30 days of this Order, redeposit $3462.83 in the Court registry towards payment of Solid Waste liens. The Clerk shall forthwith distribute said funds to the County’s Department of Sold Waste Management for payment of liens.
The County claims that this order must be reversed for a number of reasons, not the least of which is that the court below had no jurisdiction to enter it. We agree.
“Except as provided by Rules 1.530 and 1.540, Florida Rules of Civil Procedure, the trial court has no authority to alter, modify or vacate an order or judgment.” Shelby Mut. Ins. Co. of Shelby, Ohio v. Pearson, 236 So.2d 1, 3 (Fla.1970); Bank One, N.A. v. Batronie, 884 So.2d 346, 348 (Fla. 2d DCA 2004) (“After rendition of a final judgment, the trial court loses jurisdiction over the case except to enforce the judgment and except as provided by rule 1.540.”); see also Bane v. Bane, 775 So.2d 938, 941 (Fla.2000) (“[T]he one exception to the rule of absolute finality is rule 1.540, ‘which gives the court jurisdiction to relieve a party from the act of finality in a narrow range of circumstances.’ ”) (quoting Miller v. Fortune Ins. Co., 484 So.2d 1221, 1223 (Fla.1986)).
We find no part of rule 1.540 which could be applied to provide the relief granted in this case. As to rule 1.540 provisions (b)(1), (2), and (3), the motion was untimely. There is no allegation that the underlying judgment was void, making provision (b)(4) inapplicable.
As to a claim under provision (b)(5),[4] we conclude that the judgment entered below has not been satisfied by full compliance with the parties’ purported settlement agreement. Indeed, the record suggests that no agreement regarding satisfaction of the County’s liens exists. The face of the “Settlement Request Form to Supervisor,” including the markings thereon, do not evidence a valid enforceable agreement between the parties, but instead documents an offer to settle for a specified sum and an unaccepted counter offer for payment of that sum from a specified fund. As the record confirms, there was no “meeting of the minds” and thus, no resulting agreement. See Seawell v. Hargarten, 28 So.3d 152, 155 (Fla. 1st DCA 2010) (concluding “a misunderstanding cannot result in agreement or to a ‘meeting of the minds’ required to form a contract.”); see also Pan Am. W., Ltd. v. Cardinal Commercial Dev., LLC, 50 So.3d 68, 72 (Fla. 3d DCA 2010) (citing and quoting Bankers Trust Co. v. Basciano, 960 So.2d 773, 777 (Fla. 5th DCA 2007) for the proposition that a contract cannot be created without “mutual assent to a certain and definite proposition”).[5]
*86 The fact that no meeting of the minds occurred was confirmed by the testimony of the two Team Metro supervisors identified by Second Sunrise as having been involved in purportedly coming to an agreement. Both Ms. Flores and Mr. Ma-roof testified that while they had the authority to compromise the amount due on outstanding liens, they had no authority to accept payment of a reduced amount from a registry surplus, and had never done so. This testimony makes sense on a number of levels. First, as these witnesses testified, the funds in the registry were not the tax deed purchaser’s funds to direct or spend. Second, it would make no sense for the County to agree to take less than the amount on deposit in the registry because by law the County’s liens survived the tax deed sale, in this case entitling the County to the entire surplus. See Penzell v. M & M Constr. Group Corp., 915 So.2d 194, 195 (Fla. 3d DCA 2005) (“Section 197.582(2), Florida Statutes (2004) establishes the manner in which excess proceeds from a tax sale must be distributed, and prioritizes ‘the payment of any lien of record held by a governmental unit against the property.’ ”); § 197.582(2), Fla. Stat. (2004). (“Section 197.582(2), in prioritizing liens held by governmental units, requires that governmental liens be satisfied before satisfying other claims.”). Because the record confirms that no settlement was reached between the parties, the final judgment could not have been “satisfied” as contemplated by provision (b)(5) when the County secured more than $14,000 from the funds in the registry. Fla. R. Civ. P. 1.540(b)(5).
Nor can it be claimed that “it is no longer equitable that the [Final Judgment] should have prospective application.” Fla. R. Civ. P. 1.540(b)(5). The law is clear that something must have happened after the entry of final judgment that should “equitably limit[ ]” the judgment’s application to satisfy this condition; here the alleged agreement occurred months before the October 30, 2007 final judgment. See Baker v. Baker, 920 So.2d 689, 692 (Fla. 2d DCA 2006) (“[T]his court has held that the equities mentioned in the rule’s fifth ground are limited to ones that come to fruition after the final judgment.”); see also Brindle v. Brindle, 994 So.2d 1174, 1176 (Fla. 3d DCA 2008); Hensel v. Hensel, 276 So.2d 227, 228 (Fla. 2d DCA 1973) (finding that “the equities spoken of in ground No. 5 of [rule 1.540(b) ] are those which come to fruition [a]fter a final judgment” and concluding that a judgment is “entitled to the ‘finality’ inherent in the concept of res judicata”).
Because Second Sunrise’s motion failed to invoke any basis for conferring jurisdiction under rule 1.540, the court below had no authority to entertain Second Sunrise’s “Motion for Return of Tax Deed Surplus and for Other Relief.” Accordingly, the November 5, 2009 order “amending]” the October 30, 2007 final judgment is reversed.

. Section 197.552, Florida Statutes (2010), provides in relevant part:
a lien of record held by a municipal or county governmental unit, special district, or community development district, when such lien is not satisfied as of the disbursement of proceeds of sale under the provisions of s. 197.582, shall survive the issuance of a tax deed.

. Mr. Maroof is another Team Metro supervisor that Mr. Yasin had dealt with in the past.

. Ms. Flores maintained that her initials on the settlement form indicated only a confirmation of the figures shown, and was never intended to signify her agreement to Mr. Ya-sin's proposal that the sum be taken from the surplus.

. Addressing that provision, Florida Rule of Civil Procedure Rule 1.540(b), provides:
On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, decree, order, or proceeding for the following reasons: ... (5) that the judgment or decree has been satisfied, released, or discharged, or a prior judgment or decree upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or decree should have prospective application.

. The proposed "settlement amount” — $14,-276.59 — reflected on the "Settlement Request Form to Supervisor," clearly included the amounts due on Solid Waste liens. That is, if the parties actually reached the settlement alleged, the Solid Waste liens would have also been wiped out in accordance with that settlement. This makes the deed holder’s argument that an agreement had been reached and the amount paid to Team Metro over $14,276.59 had to be returned to the registry to satisfy pending Solid Waste liens, all the more specious.